THE BOARD OF TRUSTEES OF THE ILLINOIS AND MICHIGAN CANAL, appellants, v. PHILO A. HAVEN AND ORLANDO H. HAVEN, appellees.

*Appeal from Will.*

The Act of Congress, approved March 30th, 1822, authorizing the State of Illinois to survey and mark, through the public lands of the United States, the route of the Canal connecting the Illinois River with the southern bend of Lake Michigan, and reserving forever from any sale to be made by the United States, and vesting in said State for a Canal, ninety feet on each side of said Canal, does not apply to the sixteenth sections. These sections were not public lands at the passage of this Act, having been granted to the State for the use of schools under the Congressional Ordinance of April 18th, 1818, and the Ordinance adopted by the Convention, August 26th, 1818, accepting the propositions of Congress.

In a grant by the United States, of land bordering on a stream not navigable, it appeared by the minutes in the Surveyor's Office that the stream was meandered, but there was no marked line upon the plat by which the grant was made, limiting the grant to the margin of the stream : *Held*, that the grantee took to the centre thread of the stream. A meandered line run for the purpose of determining the quantity of land in the fraction is not a boundary.

The grantee of land bordering on a stream not navigable takes to the centre of the stream unless there is an express reservation confining him to the margin, and is entitled to recover damages against a party who, to his injury, diverts the water passing over his land from its natural channel.

THIS case was submitted to the Circuit Court of Will county, at the October term, 1848, the Hon. Jesse B. Thomas presiding, upon an agreed statement of facts. The appellees, who were the plaintiffs below, claimed damages of the appellants, defendants below, for injury to their mill, resulting from a diversion by said defendants of the water of the Des Plaines River, from the mill of said plaintiffs. The Circuit Court decided, upon the agreed case submitted to it, that the plaintiffs were entitled to damages, the amount to be determined in the manner pointed out in said agreement. Each party to the agreement stipulated for the right of appeal, and the defendants below appealed from the decision of the Circuit Court. The agreed case is set forth in the Opinion of the Court.

*E. W. Tracey* for the appellants, contended that the condition of the grant of Canal lands by Act of Congress of 1822, was subject to the control of the General Government. The Act of 1827 was an extension of the time of compliance with the conditions of the grant, and was a waiver of the condition of the Act of 1822. The old grant stood unrepealed, and by the second grant became absolute. 2 U. S. Dig. 472, § 38.

The plaintiffs below purchased with full knowledge of these Acts, and at their own peril. They cannot now come in and resuscitate an obligation fully discharged, and a condition fully waived. The grant itself is no longer voidable by the United States or by the State. The State held in trust and could not sell in contravention of that trust.

It is contended by the appellees that there being no express reservation, the rights of the grantee extend to the thread of the stream. It does not follow, as a matter of course that every purchase upon a stream extends to the centre of the stream. The question is to be determined on a construction of the grant. Land does not pass as appurtenant to land. All maps, plats, &c. are to be taken in connection with the grant to aid in its construction.

The counsel cited 2 Smith's Leading Cases, 193, and read and commented upon the principles there laid down. He also cited *Chiles* v. *Starr*, 4 Hill's (N. Y.) R. 369, in which the authorities are fully quoted; also Hardin, 259.

He also contended that, by the grant and plats of record, the plaintiffs were shut off by the meanders of the stream from asserting their claims, and quoted and commented upon the case of *Middleton* v. *Pritchard*, 3 Scam. 510. If meanderings are laid down upon the plat, the plat furnishes evidences to aid in the construction of the grant.

*I. M. Wilson* and *J. H. Collins*, for the appellees.

The plaintiffs, being owners of the land on both sides of the Des Plaines River, own the bed of the river and the exclusive right to use the water in the stream as it is accustomed to run in its natural channel.

Canal Trustees *v.* Haven.

Grants of land upon streams above tide water carry to the grantee the exclusive right to the centre of the stream. Neither the State nor an individual has a right to divert the stream. It would require an express exception in the grant, or immemorial usage, to limit the title of the owner to the edge of the river. 3 Kent's Com. 427.

If the same person be owner of the land on both sides of the river he owns the whole river to the extent of the length of his lands upon it. Ib. 428. This doctrine is sustained by all the authorities in England and America, and ably illustrated in the following cases. *Ex parte* Jennings, 6 Cowen, 527 and note; *People* v. *Platt*, 17 Johns. 209; *Hooker* v. *Cummings*, 20 do. 90; *The People* v. *Canal Appraisers*, 13 Wend. 371; *Commissioners Canal Fund* v. *Kempshall*, 26 do. 404.

The fact that the stream is meandered does not alter the rule of law as above laid down. This identical question was decided in the Supreme Court of Ohio in the case of *Goort* v. *Chambers*, Ohio Cond. R. 643. In the case of *Middleton* v. *Pritchard*, 3 Scam. 510, the Supreme Court of this State have decided this question, and reversed the decision of the Circuit Court upon the express ground that it refused to instruct the jury that, in the case of land upon a stream meandered, the owner of the land owned to the centre of the stream; and the Court say (p. 522) "the meandering is for the purpose of ascertaining the quantity of the land, and cannot control. It is sold more or less."

The defence is, that by Act of Congress, March 30th, 1822, ninety feet on each side of the Canal was granted to the State of Illinois, under whom defendants claim. This position can only affect the lots on the west side of the river.

The answer is, the Act became inoperative and the title revested in the United States, upon the failure of the State to perform the conditions annexed to the grant. No entry is necessary to revest, on failure to perform condition subsequent, unless there is an actual possession. No entry is necessary by the General Government in order to repossess itself of land which reverts, by the terms of the

grant, upon the failure of the grantee to perform a condition. *Kennedy* v. *McCartney*, 4 Porter (Ala.) 141 ; 3 U. S. Dig. 309.

But the government did enter by her agents and survey the same, and in 1835 sold a portion, without reservation, under a proclamation of the President.

The Act of March 2d, 1827, grants alternate sections, including same land in part. None of the conditions in the former Act having been complied with, the Act of 1827 does not recognize the existence of the former Act. It is not amendatory to it, and does not extend the time for completing the Canal under the Act of 1822, but limits a time for the completion of a Canal independent of that Act.

But the land was granted to the State for the use of schools by the Ordinance of 1818 (Rev. Stat. p. 27, § 1) and cannot be affected by a subsequent grant of the same lands, even admitting the Act of 1822 to be in force.

This grant was for a valuable consideration, as our Supreme Court decided in the case of *Bradley* v. *Case*, 3 Scam. 585.

*N. H. Purple*, for the appellants, in conclusion, contended that the maps referred to in the agreed statement show the surveys to have been made by the Government in 1822 along the borders of the stream. There is no difficulty about the law on this subject; the only question is one of construction, as to whether the grant is to the stream by its meanderings, or to the middle thread. The view we contend for is not in conflict with the case of *Middleton* v. *Pritchard*, 3 Scam. 510. The Court there say that there was nothing to show the meanderings.: here we have a plat to show them, and beyond these, the grantee cannot go.

The State has divided the school section into lots and sold them by the plat and not otherwise.

In regard to the condition in the Act of Congress of 1822, as matter of mere law it may be true that the Government, being a sovereignty, need not enter for condition broken ; but in this case Congress, by its Act of 1827, designed, not to repeal its original grant, but to carry out its original intention

The counsel also referred to several Acts of the Legislature passéd prior to the original sale of the lots in question by the State, and giving the power to the Canal Commissioners to take and use water, &c. from the land of the State, and contended that the rights of subsequent purchasers from the State were to be construed with reference to these Acts.

The Opinion of the Court was delivered by

TRUMBULL, J. This case comes before us on appeal from the decision of the Circuit Court upon the following agreement :

"The plaintiffs and defendants in this cause agree upon the following statement of facts to be submitted to the Court for its decision thereon :

The plat hereunto annexed, No. 1, is a plat of section sixteen, in township thirty five north, of range ten east of the third principal meridian, and also the plat of section nine, in the same township, being true plats of said sections as returned by the Surveyor General of the United States, and deposited in the Land Office of Chicago, on which said plat is represented the Des Plaines River, as it runs through said sections ; and it is admitted that said Des Plaines River is meandered through the entire length of said sections, as appears by the minutes of said survey, in the said Surveyor's Office, a copy of which minutes is also attached, marked, 2, and delineated on said maps.

It is also admitted that said section sixteen is one of the sections granted by Congress to the State of Illinois, for the use of the inhabitants of the township in which the same is situated for the use of schools, and accepted by an Ordinance of the 26th August, 1818, accepting certain propositions made by Congress, April 18, 1818.

It is also admitted that the plat hereto annexed, marked 3, is a true copy of the plat of said section sixteen, as duly laid out and sub-divided, and certified and acknowleged, and recorded according to law, and as set forth on said plat ; and a plat of said River and Canal with the dams, basins, and locks, as made and constructed from Lockport, four and

a half miles above the said plaintiffs, to and below the said plaintiffs' mills, is hereto annexed, marked No. 4.

It is also admitted that at a sale of lots in said section sixteen, in October 1834, by and under the authority of the State, in pursuance of the statute in such case made and provided, John H. Kinzie purchased lots one and two, in block fifty seven, and that Patents issued to John H. Kinzie for the same in 1835, conveying title in fee simple, as by law directed, and that said John H. Kinzie conveyed to Martin H. Demmond and John M. Wilson his title as above stated, and that Martin H. Demmond and John M. Wilson subsequently conveyed the same to the plaintiffs herein. Lots one and four, in block fifty six, were sold at the sale of said section sixteen in 1834, were afterwards purchased by the plaintiffs for taxes, and a deed bearing date,——obtained of the sheriff, and they have until this time remained in undisputed possession of said lots, except so much of them as has been appropriated by the Canal.

It is admitted that the Illinois and Michigan Canal was commenced in 1836, and that portions of the Canal through said sections were put under contract in 1838, and the guard lock on section nine near the dam across said River, first above said section sixteen, was commenced in 1840, by digging the pit in the spring and a part of the stone laid in the fall. The stone for the same was quarried and dressed during the spring and summer of the same year. The stone for the said dam on section nine (which is a cement and cut-stone dam,) was commenced being quarried and cut the same season, and the dam was commenced the following season, in the spring, and finished in the fall of 1841. The contracts for building said dam and locks were made in 1839, and it was generally understood as early as 1839, that said lock and dam were to be built.

It is agreed that in the spring of 1839, the plaintiffs commenced building a mill on said lot one in block fifty seven, on section sixteen, and also a dam cross the Des Plaines River, connecting said lot one in block fifty seven on the east bank of said River with the division line between lots

one and four in block fifty six, on the west bank of said River, and completed said dam and saw mill so as to use the same in the following October or November. Soon thereafter, the Commissioners of the Illinois and Michigan Canal, in constructing said Canal, removed the west end of said dam so that it became connected with the east bank of the Canal, which bank encroached upon the natural channel of the river about ten feet.

The head and fall at said plaintiffs' dam, used by them in propelling their machinery, is six feet, leaving a fall on said lots one and two in block fifty seven of about six inches more. In the year 1842, the plaintiffs also built a grist mill on said lot two in block fifty seven, also added to the saw mill a lath mill, in 1843, and built a dwelling house on said lot one in block fifty seven, in 1846, and also a machine shop on said lot one in block fifty seven, in 1847. Said mills and buildings have been used by the plaintiffs for the use and purposes for which they were built, from the time they were built as aforesaid till the 20th day of April, 1848; the water in said River being at times insufficient for all said machinery. On the 20th of April, 1848, the defendants diverted, or caused to be diverted into the Canal for the use of said Canal from the natural channel of the River, the whole or principal part of the waters of said River, by turning the same from the basin made in said River by means of the dam on section nine, being a Canal section, and about half a mile above the dam of said plaintiffs, so that the plaintiffs are wholly deprived of the use of the water at their said mills, and have not since been able to run their machinery. From the time of putting this portion of the Canal under contract in 1838, and up to the year 1843 there had been no change in the original plan of supplying the Canal with water from Lake Michigan by the deep cut as originally contemplated, and all contracts let previous to 1843, and all the arrangements of said Canal were made notoriously upon the plan aforesaid, and with a view to supply the Canal from Lake Michigan.

It is also admitted that the Des Plaines River is not navi-

gable in fact, although a portion of it is declared to be so by Act of the Legislature.

The work upon the Canal commenced being suspended in 1841, and was entirely suspended from 1842 to 1845.

The question of law arising from this state of facts is, whether the plaintiffs are entitled to compensation for the injury and damages they have sustained in consequence of the diversion of the water of the Des Plaines River aforesaid, into the Canal as aforesaid.

And it is stipulated and agreed, that whichever way the Judge decides said question, either party may have thirty days from and after notice of said decision to take an appeal therefrom, or bring a writ of error to the Supreme Court.

If the said decision shall be made in favor of the plaintiffs by the Circuit Court, and the defendants do not appeal, or bring a writ of error, within the time aforesaid, or if, upon an appeal the Supreme Court shall decide in favor of the plaintiffs' right to recover their damages as aforesaid, then appraisers shall be appointed by the Judge of the said Circuit Court to appraise the damages under and in pursuance of the 9th section of the Act of March 2d, 1837, each party reserving the right to make objections to the report of said appraisers before the Circuit Court, and to appeal from the decision or order of the Circuit Court upon such appraisal as provided for in the said Act."

The Circuit Court decided that the appellees were entitled to damages, which decision is now assigned for error.

It appears from map number three, that lots one and two in block fifty seven lie immediately upon the east bank of the Des Plaines River, and that lots one and four in block fifty six are situated upon the west side of said River, from which they are separated by a street. Map two shows that the whole of lot four, and nearly all of lot one in block fifty six, as well as the street between said lots and the River, and several feet of the River, are embraced by the Canal itself; so that one side of the River, including a portion of the dam of the appellees, is now occupied by the Canal, and upon the opposite side lie lots one and two in block fifty seven.

The general rule, that rivers not navigable belong to the owners of the adjoining land, and that, when the opposite banks belong to different individuals, each holds to the thread or middle of the stream, is not disputed, but then it is insisted that the appellees have no such right in this case, for two reasons :

It is first contended, that by an Act of Congress, approved March 30, 1822, the State of Illinois was authorized to survey and mark through the public lands of the United States the route of the Canal connecting the Illinois River with the southern bend of Lake Michigan, and ninety feet on each side of said Canal was forever reserved from any sale to be made by the United States, and vested in said State for a canal; wherefore it is said that the appellees are deprived of any right which they might otherwise have to any water or land within ninety feet of said Canal.   It is to be observed, that a certain time was provided by the Act of Congress within which the State was to commence and complete said Canal, or, upon failure to do so, it was declared that the reservation and grant made by said Act should be void and of none effect.   Without stopping to inquire whether the right of way secured by the Act of Congress was forfeited, so as to revest *ipso facto* in the government, upon failure of the State to commence and complete the Canal within the time limited by the Act, or whether, as is contended, the conditions of the Act of 1822 were waived, and the time for commencing and completing the Canal extended by an Act of Congress passed March 2, 1827, it will be sufficient to show that neither of said Acts of Congress can have any bearing upon the rights of the appellees, admitting even that they are of the character, and contain all that is contended for by the appellants.

The lots of the appellees are situate on section sixteen, which was granted to the State for the use of schools, prior to the passage of the Act of 1822.   It was not, therefore, public land at the passage of the Act, and consequently no part of it could at that time have been reserved from sale by the United States.

The various Acts of the Legislature of Illinois, reserving

a right of way for the Canal, and authorizing the Canal Commissioners to enter upon and use any lands, water, or materials necessary in the construction, have all been examined, but are not referred to in detail, because all of said Acts, passed prior to the sale of section sixteen, had reference to *canal* lands, and whenever any other lands, water, or materials than those appropriated to the Canal have been authorized to be taken, it has only been upon making compensation.

It is next insisted that the United States, in granting the school section to the State, did not include in the grant the bed of the stream running through it, but that said stream, the Des Plaines River, was meandered through said section, and a plat thereof returned to the Surveyor General's Office, showing that the River was not included in the survey; and while the appellants admit that a grant of land bounded by a stream not navigable, passes the property to the thread of the stream, yet it is insisted that the owner has the right to restrict his grant either to the edge of the water, or to high or low water mark. Admit that the owner may so restrict his grant, of which there can be no question, when the intention is clear and manifest, and still the admission cannot avail the appellants, because there is nothing in the record to show that the United States intended to limit their grant so as to exclude the River. Neither the plats filed in the Land or Surveyor General's Office, show any lines marking the courses and distances along the margin of the River, as a boundary of the adjoining land.

The agreed case states as follows : "It is admitted that said Des Plaines River is meandered through the entire length of said sections, as appears by the minutes of said survey, in said Surveyor's Office, a copy of which minutes is also attached, marked 2, and delineated on said maps." We do not understand this language to imply that the meandered line was marked upon the maps in the Land and Surveyor's Offices, but that it would appear by the *minutes*, not *maps*, that said River was meandered, a copy of which minutes is also attached and delineated on said maps, not

as they appear in said Offices; but as they are made exhibits, which, however, is an error in point of fact, as there are no distinctions of said meandered lines upon the maps. As there was, therefore, no marked line upon the plat by which the grant was made, defining and limiting the land granted to the margin of the stream, the whole argument founded upon such a supposed state of facts fails.

That a meandered line, which is run for the purpose of ascertaining the quantity of land in the fraction, is not a boundary, has been settled by a former decision of this Court, in the case of *Middleton* v. *Pritchard*, 3 Scam. 510.

In that case the Court say : "It appears the Surveyor of the Government traced the courses and distances along the margin of the slough, next the main land, in order to estimate the quantity of land in the fraction ; and which estimate did not include the *locus in quo*. But the plats in the Land Office, and Surveyor General's Office, have no line marking their courses and distances as a boundary." Neither have the plats referred to in this case.

No other points have been made for a reversal of the judgment of the Circuit Court, except the suggestion that there is nothing in the record to show that lots one and two in block fifty seven border upon the River. This is a misapprehension. Map No. 3 shows that said lots do lie upon the River, and the right of the appellees to the water of the River opposite their lots to the middle of the stream being established, it follows that they are entitled to damages for a diversion of the water from its natural flow along the bed of said stream.

What the amount of their damages will be, or whether, having a right to only one-half the stream, the appellees can so use it, the appellants being entitled to the other half, as to make it available for running the machinery which they have put up on said lots one and two, are questions not now before us. They would be entitled to at least nominal damages, even if no water power could be obtained from the River upon said lots.

The judgment of the Circuit Court is affirmed with costs.

*Judgment affirmed.*