THE MENASHA WOODEN WARE COMPANY, Plaintiff in error, vs. LAWSON and others, Defendants in error.

*January 16 — January 31, 1888.*

*Boundaries of riparian lands: Actual shore line: Meander line: Question of law or fact.*

1. The locality of the shore line of a meandered river at the time of the government survey is purely a question of fact.
2. Meander lines made by the government surveyors are not to be considered in determining the actual boundaries of lots sold by the government as bounded upon rivers or other navigable waters.
3. In this case the boundary line between two adjacent lots as they extend into a river, is *held* to be a line drawn perpendicularly to the thread of the river from the point where the government line between such lots strikes the *actual shore line* (not the meander line) of the river.

ERROR to the Circuit Court for *Winnebago* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The defendants in error brought an action of ejectment to recover the possession of a small tract of land in the city of Menasha, and lying on the southerly side of the north channel of the Fox river. The plaintiffs claimed on the trial that the land in controversy was a part of lot 1, section 22, of township 20 N., of range 17 E., and the defendant, the now plaintiff in error, claimed that it was a part of lot 2, in the same section. It is not denied that on

the trial the defendants in error established their ownership of the land if it was in fact a part of said lot 1, and that plaintiff in error owned the land if it was a part of lot 2.

The case was tried by the court without a jury, and, after hearing the evidence, the court made the following findings of fact, viz.: "(1) That the plaintiffs are the owners of that part of lot 1, section 22, town 20 north, of range 17 east, bordering on the north outlet of Lake Winnebago, or north branch of the Fox river; and that the defendant is the owner of that part of lot 2 of said section bordering on said river. (2) That the title of the plaintiffs in that part of said lot 1 bordering on said river, is stated in the complaint. (3) That the actual shore line of said river or outlet was, at the time of the government survey, about 320.6 feet north of the meander line run by the United States government along the south bank of said outlet or river. (4) That the meander line run by the government along the said south bank runs at the foot of a sharp, steep bank, about ten feet high, and at about the line of the ordinary high-water mark of the said outlet or river during the spring of the year. (5) That during the summer months the margin of said outlet or river is north of the said meander line about 320.6 feet, which margin is found to be the south bank of said north outlet or river. (6) That between said meander line and said bank, north of the same, the land is low, marshy, boggy ground, covered over with wild rice, rushes, and marsh grass. (7) That the boundary line between lots 1 and 2 of said section runs obliquely to the course of the said river or outlet, and to the course of the south bank thereof, and strikes said meander line at the point where surveyor Edwards set an iron pin or bolt. (8) That the defendant was, at the commencement of this action, in possession of the land described in plaintiffs' complaint. (9) That the same consists partly of low, marshy swamp, filled with sawdust, and partly of land covered by

The Menasha Wooden Ware Co. vs. Lawson and others.

shallow water to the depth of from six inches to two feet, over which the defendant maintains a private bridge, as appears on the map marked 'Ex. C,' attached hereto, and made a part of these findings." [1]

[1] The accompanying sketch, though deficient in details, will explain the situation of the land in dispute. The contention was as to whether the parcel of land L M N O was a part of lot 1 or of lot 2. The private bridge maintained by the defendant (mentioned in the findings) started at about the point X, and crossed the river in a direction slightly west of north. The western line of lot 2, at which point the river runs to the northwest, is not shown.—REP.

Upon these findings of facts the learned circuit judge made the following statement and conclusions of law: "Both parties contend that the owners of lot 1 own to the middle thread of the stream, and that the owners of lot 2 own to the middle thread of the stream. Both also contend that the boundary line between lots 1 and 2 extends to the middle thread of the stream or outlet in a line perpendicular to the middle thread thereof. The contention between the parties is this: The plaintiffs contend that the actual bank of the stream coincides with the meander line, and is at the foot of the sharp bank, while the defendant contends that it is about 320.6 feet north thereof, and at the outer edge of the strip of marsh or bog. The plaintiffs contend that the boundary line between lots 1 and 2 drawn perpendicularly to the thread of the stream, starts from the point where the line between lots 1 and 2 strikes the meander line, while the defendant contends that such boundary line starts from the point where the line between lots 1 and 2, projected north, cuts the actual shore line. On the first contention, which is a question of fact, I have found for the defendant. On the second contention, which is a question of law, I have found for the plaintiffs, and I conclude: (1) That the boundary line between lots 1 and 2, as they extend into said outlet or river, is a line drawn perpendicularly to the thread of said outlet or river from the point where the government line between said lots strikes the meander line, and not from a point where the extension of such government line between lots 1 and 2 strikes the actual shore line. (2) I find that the middle thread of said stream is a line equidistant from the opposite actual banks or margins of said river or outlet, as laid on map Exhibit C, hereto attached. (3) That the plaintiffs are entitled to recover of the defendant the land described in the complaint. (4) That their title is as alleged in the complaint. (5) That the defendant wrongfully withheld the same from the

plaintiffs at the commencement of this action. (6) That the plaintiffs should recover the costs of this action. (7) That the plaintiffs should have judgment as prayed for."

Judgment was entered in favor of the defendants in error, in accordance with the conclusions of law. The defendants in error excepted to the third and fifth findings of fact as not supported by the evidence.

*Charles W. Felker*, for the plaintiff in error, cited *Wright v. Day*, 33 Wis. 260, 263; *Railroad Co. v. Schurmeir*, 7 Wall. 272; *Schurmeier v. St. P. & P. R. Co.* 10 Minn. 82; *Boorman v. Sunnuchs*, 42 Wis. 243; *Bay City G. L. Co. v. Ind. Works*, 28 Mich. 182; *Clark v. Campau*, 19 id. 325.

*Moses Hooper*, for the defendants in error, contended that the question where the actual margin of the river was, was a mixed question of fact and law. Upon the actual and simple facts found, and upon the law, the actual margin of the river in this case coincided with the meander line. *Howard v. Ingersoll*, 13 How. 381, 414–416; *Alabama v. Georgia*, 23 id. 506; *Houghton v. C., D. & M. R. Co.* 47 Iowa, 370, 374; *Haight v. Keokuk*, 4 id. 199, 212, 213; *Stone v. Augusta*, 46 Me. 127, 137; *McCullough v. Wainright*, 14 Pa. St. 171. So far as the law enters into a finding of fact, so far it is a conclusion of law. *Sherman v. M. M. Ins. Co.* 39 Wis. 104. Where the line between government subdivisions strikes the meander line obliquely, and the meander line and actual margin do not coincide, the perpendicular line to the thread of the stream should be struck from the meander line, not from the actual margin. (1) The meander line is certain, fixed, and definite, while the shore line may change from year to year, and where the shore is marshy it is an uncertain line at any time. (2) The government owned all the land, including the river bottom, and had the authority to fix what, in its conveyances, it would deem the margin. It so fixed it, and all grantees should acquiesce in its determination of the question. (3) Running toward

the river on the subdivision line you reach the point which the United States said, in its grants, was on the river bank or margin. If you find that you have not in fact reached the margin, the true course to it is not the line of approach, but the shortest or perpendicular line. This is well settled by the decisions in analogous cases. *Newton v. Eddy*, 23 Vt. 319; *Wood v. Appal*, 63 Pa. St. 210. (4) The opposite rule would often exclude purchasers of river lots from access to the river, or purchasers of lake fronts from the lake. But parties purchasing property shown by the government surveys and plats to be riparian property should not be excluded from the water front. Gould on Waters, secs. 76, 197; *Railroad Co. v. Schurmeir*, 7 Wall. 272; *Land· Co. v. Saunders*, 103 U. S. 316; *Bates v. I. C. R. Co.* 1 Black, 204; *Lindsey v. Hawes*, 2 id. 554; *Mageehan v. Adams*, 2 Bin. 109; *O'Donnell v. Kelsey*, 10 N. Y. 412; *Knight v. Wilder*, 2 Cush. 209; *Magee v. Doe*, 22 Ala. 699; *Minto v. Delaney*, 7 Oreg. 337, 342–345; *Pere Marquette Boom Co. v. Adams*, 44 Mich. 403–405; *Bay City G. L. Co. v. Ind. Works*, 28 id. 182; *St. Clair v. Lovingston*, 23 Wall. 46, 63; *Churchill v. Grundy*, 5 Dana, 100; *Brown v. Huger*, 21 How. 305; *Middleton v. Pritchard*, 4 Ill. 510, 514, 515, 519, 520; *Canal Trustees v. Havens*, 10 id. 548, 558; *Kraut v. Crawford*, 18 Iowa, 549; *Fletcher v. T. B. R. Boom Co.* 51 Mich. 277. See, also, Bellows & Hodgman's Manual of Land Surveying, 359, 360; *Miller v. Hepburn*, 8 Bush, 326.

•

TAYLOR, J. The plaintiff in error assigns as error that the circuit court erred in its conclusion of law that the boundary line between the two lots 1 and 2 of said section 22 should be drawn perpendicularly to the thread of the stream from the point where the meander line intersects the government division line between said lots 1 and 2. The learned counsel for the defendants in error insists that the third finding of fact is a mixed question of law and fact, and that he

may therefore question the accuracy of the finding.    If it is to be considered a pure question of fact, then he admits that this court would not be justified in reversing that finding.    We are clearly of the opinion that the locality of the shore line of the river at the time of the government survey is a pure question of fact, and the finding that it was 320.6 feet north of the meander line run by the United States government along the south bank of said river, must be sustained upon the evidence.    We do not think the sixth and ninth findings of fact are inconsistent with said third finding.

The real question in the case is whether the circuit court was right in deciding "that the boundary line between lots 1 and 2, as they extend into said outlet or river, is a line drawn perpendicularly to the thread of the outlet or river, from the point where the government line between said lots strikes the meander line, and not from the point where the extension of such government line between lots 1 and 2 strikes the shore line."    After a careful consideration of the reasons and argument of the learned counsel for the defendants in error in support of the propositions laid down by the circuit court, we feel ourselves compelled to hold that the proposition is not the law applicable to a case of this kind.    We think the cases in this court, in Minnesota, the supreme court of the United States, and in other courts, expressly hold that the meander lines made by the government surveyors are not to be considered in determining the actual boundaries of lots which are sold by the government as bounded upon rivers or other navigable waters.    The government plats show on their face no meander lines as different from the actual banks or shore of the rivers upon which such lots are described as lying. The purchaser does not know the meander lines, and does not purchase with any regard to them.    He purchases a lot bounded on either two or three sides by straight lines, and

on the other side by the river as shown upon the plat. We think this was expressly decided in the case of *Schurmeier v. St. P. & P. R. Co.* 10 Minn. 82, 7 Wall. 272, both by the supreme court of Minnesota and the supreme court of the United States. If there had been no meander line in fact run, then there could be no pretense of contention that the west line of lot 1, which is also the east line of lot 2, did not extend in a straight line to the bank or shore of the river. If, therefore, the actual meander line is no part of the actual boundary of the lot purchased from the government, it would seem to have no efficacy in changing the direction of the actual boundary lines of the lots in its course to the river.

In *Wright v. Day*, 33 Wis. 260, 263, the court say: "The meander line of land bordering upon a navigable stream or river is never considered the boundary line of the government subdivision on the side next the river, but that the purchaser from the government takes to the margin of the stream or water's edge, and becomes the unqualified owner of all land lying above ordinary high-water mark of the stream."

In *Jones v. Pettibone*, 2 Wis. 308, 320, speaking of the meander line, the court say: "But this line is not the boundary of the lot, and is run merely to determine the quantity of land contained in it. We are of opinion that the lots extended to the stream, and of course to its center."

Again, in *Boorman v. Sunnuchs*, 42 Wis. 243, it is said "that, if the meander line and the actual water line differ, the latter is the true line of a lot bounded in terms by the meander line."

In *Railroad Co. v. Schurmeir*, 7 Wall. 272, the court say: "Lines intended as boundaries, but which were not actually run and marked, must be ascertained by running straight lines from the established corners to the opposite corresponding corners; but where no such opposite correspond-

ing corners have been or can be fixed, the boundary lines are required to be ascertained by running from the established corners due north and south or east and west, as the case may be, to the watercourse, Indian boundary line, or other external boundary of such fractional township. Express decision of the supreme court of the state was that the river, in this case, and not the meander line, is the west boundary of the lot, and in that conclusion of the state court we entirely concur. Meander lines are run in surveying fractional portions of the public lands, bordering upon navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream, and as the means of ascertaining the quantity of the land in the fraction subject to sale, and which is to be paid for by the purchaser. In preparing the official plat from the field-notes, the meander line is represented as the border line of the stream, and shows, to a demonstration, that the watercourse, and not the meander line as actually run on the land, is the true boundary." In the same case the supreme court of Minnesota say: "There is no such thing as a meander line in such case, distinct and separate from the line of the river. It is merely an accurate survey of the river. . . . The plat shows the river as a boundary, and the law, as we have seen above, requires the boundary of such lot on the other two sides to run to the river, and designates the river as the boundary of the third side." "We think, therefore, it is too clear to admit of a reasonable doubt that the river bounds this lot on one side." 10 Minn. 82, 101. The acts of Congress on the subject of surveys will be found, 2 Stats. at Large, 73, 313. See, also, *Middleton v. Pritchard*, 4 Ill. 510, 519; *Canal Trustees v. Haven*, 10 Ill. 548, 558; *Clark v. Campau*, 19 Mich. 325; *Cox v. Couch*, 8 Pa. St. 147.

The foregoing cases we think clearly establish the rule that on all sales of land by the United States, of lots which

are platted as bounded by a river, the purchaser takes to the shore or bank of the river, and the meander line, not being a boundary or in any way referred to as such in the conveyance, cannot have any effect in giving direction to the lines of the lot as designated on the government plat.

The case cited by the learned counsel for the defendants in error as holding a different doctrine [ *Wood v. Appal,* 63 Pa. St. 210], is not in fact in conflict with the rule as stated above. In that case the court say: " It is obvious, therefore, when the surveyor, running in towards the river, stops on its bank and makes his corner, he means, in the absence of other evidence found in his return, to indicate his nearest convenient approach to the stream, and thus to mark where his line strikes the stream, and the river front it gives to the owner of the survey." This was said in a case where the description in the original conveyance was given by the courses, distances, and monuments made by the original survey. The opinion is closed with the following: " Of course, the rule as now laid down applies only to a case where no other intention is disclosed by the return or survey or the deed." This decision can have very little force in construing the rights of parties who buy of the government without description, except as marked and numbered on a government plat, where the side lines are directed to be straight lines by law, and are shown to be such on the plat, and the river is the boundary on the other side. The government surveyors do not run the meander line for the purpose of showing the river front which the lot has; that is shown only on the plat by the side lines of the lot.

It is urged by the learned counsel for the defendants in error that this rule ought not to be adopted because there may be cases where its adoption might work an injury to one or the other of the parties. Under the rule contended for by the learned counsel injury might also be done to one or the other party. In the case at bar no such consequences

need be considered. By extending the dividing line to the river in a straight line the defendants in error will not be cut off of any claim they could reasonably make when purchasing by the government map. On the other hand, if the rule contended for is enforced, the plaintiff in error would have its apparent river front shortened at both ends of the river front of its lot. An inspection of the government map shows that the east line of lot 2 strikes the shore of the river and the meander line at a point where the river runs from the northeast to the southwest, and so its apparent river front is shortened by the adoption of the rule as claimed by the plaintiffs in this action. Its west line strikes the river, and probably the meandered line, where the river runs to the northwest, so that, applying the rule contended for by the defendants in error, the river front of the plaintiff in error would be shortened on that side also. The rule contended for by the learned counsel for the plaintiff in error is certainly the most just as between the parties to the case at bar. If a case should occur where the enforcement of the rule approved in this case would do great injustice to one of two parties, it will be time enough to consider what ought to be done in that case.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with instructions to that court to render judgment for the plaintiff in error.