HOBSON, Chief Judge.
*192 Appellant appeals an adverse declaratory decree defining the boundary between two lots in Lee County, Florida. The two lots in quesion are located on Sanibel Island and are shown in Figure 1. The boundary question arises primarily because the title description fixes the boundary of both lots on a meander line, whereas there is a strip of land lying between the shore line and the meander line. It is undisputed that the government did not reserve the title to the land between the meander line and the shore line and so the issue is how to extend the boundary of the various lots from the meander line to the shore line.

Appellees are the owners of Government Lot 9 and appellant at one time owned all of Government Lot 4. In 1958 she sold most of the lot to a codefendant below who is not involved in this appeal, but .reserved to herself a triangular tract of land by metes and bounds description in an area which would be in Government Lot 4 if the common boundary line was prolonged to the water’s edge (dotted line AB) but which would be in Government Lot 9 if the strip of land was apportioned (line AC). She paid taxes on the triangular tract of land so reserved from 1959 through 1968 and prior to that she paid taxes on land under the general description of Lot 4.
*193 Appellees filed a complaint in the Circuit Court of Lee County asking for a declaratory decree defining the boundary between Government Lots 4 and 9. The court, in its final decree, decided that the strip of land between the meander line and the shore line, even though it was there at the time of the original survey, should be apportioned in the same manner as accretion, and that therefore the boundary should be extended from the meander line to the shore line so as to provide each lot with the same relative amount of shore line as it had on the meander line in the original survey (line AC). This placed the triangular piece of land claimed by appellant in Government Lot 9, which is owned by appellees.
Appellant contends that because the meander line was not the boundary (as agreed by both parties and the court), it should have no significance in apportioning the shore line. Rather, the boundary lines of the survey last accepted by the government prior to divesting itself of title should control, and since the boundary between the government lots was shown in a straight line, the boundary should be extended in a straight line to the water’s edge (dotted line AB). Appellant cites Boundary Control and Legal Principles by Carter M. Brown for the proposition that “normally the ownership of land lying between the Meander and high-water mark is determined by prolonging the property line to the high-water mark.”
Appellant also relies on Menasha Wooden-Ware Co. v. Lawson, 70 Wis. 600, 36 N.W. 412 (1888). This case held that where a straight boundary line between lots ended on the meander line of a river, but there was a strip of land between the meander line and the shore line of the river, the boundary line was to be extended in a straight line until it hit the shore line. However, the court specifically recognized that under the circumstances appearing in that case, its holding yielded the most just and equitable result (36 N.W. at 417).
In the case sub judice, however, if the common boundary line were extended in a straight line to the shore line and if the boundaries between other lots were extended in the same manner, appellees’ lot would be entirely cut off from the water.
While we recognize the function of meander lines:
“Meander lines merely define the general contour of a shore; and unless there is a clear indication to the contrary, the water itself is the actual boundary. The purpose of such lines is to define the sinuosities of the stream and to aid in ascertaining the quantity of land to be disposed of. In the absence of exceptions or reservations, patent and other conveyances of the subdivisions shown to border upon the stream or body of water carry title to the water’s edge and include the unmeasured strip which usually exists between the water’s edge and the meander line.” [Trustees of the Internal Improvement Fund v. Toffel, 145 So.2d 737, 741 (Fla. App.1962)]
we also feel that land purchasers should be able to rely at least generally upon meander lines which indicate that certain lots consist of waterfront property. This is not to say that meander lines be treated as boundaries, but that courts should attempt whenever possible to at least approximate the amount of shore line as indicated on a meander line when they are called upon to establish actual boundaries.
The trial judge found that the principles set forth in Hayes v. Bowman, 91 So.2d 795 (Fla.1957), were applicable to the case at bar. We agree. Although factually different, the Hayes case held that in cases where riparian rights were to be extended from the shore, all of the circumstances of the case were to be taken into consideration by the chancellor, and that each case had to be decided on its individual facts. In Hanson v. Rice, 88 *194 Minn. 273, 92 N.W. 982 (1908), the Minnesota Supreme Court held that the strip of land between a meander line and a shore line was to be treated as if it were the result of accretion, and was to be apportioned.
We find no error in the lower court’s decision to apportion the land in question in this case. After careful study of appellant’s other points on appeal, we find them to be without merit.
The decree appealed is, therefore,
Affirmed.
LILES and MANN, JJ., concur.