420 So.2d 924 (1982)
Ernest E. GILLILAN and Betty Gillilan, Husband and Wife, Appellants,
v.
G.T. KNIGHTON and Jeanette Knighton, Husband and Wife, Appellees.
No. 82-386.
District Court of Appeal of Florida, Second District.
October 22, 1982.
*925 Tilden R. Schofield, Sebring, for appellants.
Clifford M. Ables, III, Sebring, for appellees.
CAMPBELL, Judge.
The parties in this case own adjacent lots on Lake Jackson, a navigable, freshwater lake in Highlands County, Florida. Their lots lie in separate subdivisions and the southern boundary of the Gillilans' lot is the northern boundary of the Knightons' lot. This common boundary is also the boundary between the two subdivisions. In the years since these subdivisions were first platted, the lake's waters have receded and, through a combination of accretion or reliction,[1] additional land has been built up or exposed lakeward of the lots in question. The Knightons' plat reveals that Lake Jackson is the boundary of the subdivision lots. The plat containing the Gillilans' lot is a replat of a portion of another plat on which riparian rights were specifically noted. The Gillilans are long-time residents of the area, and their dock and house have been in place for over thirty years.
In 1978, the Knightons began removing vegetation and building their own dock. This activity precipitated the present dispute. The Knightons, in building their dock and in removing the vegetation, built within the accretion area and remained in an area south of a straight line extension of their upland boundary. The Gillilans claimed that this activity impaired the use of their lot and diminished its value. Accordingly, they filed suit for declaratory and injunctive relief, stating that the accretion lands should be equitably apportioned in accordance with the parties' existing lake frontage. The trial judge determined that the parties acquired title to the accretion lands by a straight line prolongation of the common boundary between the lots. The Gillilans appealed.
Two terms define the rights of parties in land contiguous to and bordering upon specific bodies of water. Riparian rights are those rights incident to ownership of land contiguous to and abutting flowing, navigable waters such as streams or rivers. American Law of Property, Vol. 6-A § 28.55 (1954). While this term is also often used to describe rights incident to ownership of property abutting a sea, lake, or pond, as contrasted with flowing, navigable waters, this is technically incorrect. Such lands are properly termed littoral. Id. at § 28.55. See Black's Law Dict. 1192 (5th ed. 1979).
Whether called littoral or riparian, these rights include the right to additional lands formed by accretions[2] or relictions. State v. Florida National Properties, Inc., 338 So.2d 13 (Fla. 1976); Merrill-Stevens Co. v. Durkee, 62 Fla. 549, 57 So. 428 (1912); Ford v. Turner, 142 So.2d 335 (Fla. 2d DCA 1962). In Florida, the extent of ownership in the lands is determined in accordance with equitable principles. Hayes v. Bowman, 91 So.2d 795 (Fla. 1957). In Johnson v. McCowen, 348 So.2d 357 (Fla. 1st DCA 1977), the owners of a waterfront lot in *926 Santa Rosa County alleged that their lot had increased by accretion and that they were entitled to these lands as littoral owners. They sought to extend one of their upland boundaries seaward in a straight line from the deed corner. The owners of the adjacent waterfront lot protested, saying that such an extension of the original boundary would invade their littoral rights. The court affirmed the trial judge's finding that the new boundary should be established by equitably apportioning the waterfront property between the parties and stated:
[N]o rule can be laid down as to every situation, since ... rights must depend in every instance upon the shape of the upland, the arm of the sea, and their [the parties] relative position to each other. The aim of all rules as applied to the rights of adjoining littoral proprietors on an irregular shore is to give each, as far as may be, a fair and reasonable opportunity of access to the channel. The general rules by which alluvion is apportioned between different littoral owners is, when practicable, [to] allot each proprietor a frontage of the same width on the new shore as on the old shore. When the general course of the shore curves or bends, two objects are to be kept in view; namely, to give each proprietor a fair share of the land and to secure to him convenient access to the water from all parts of his land by giving him a share of the outward line proportioned to a share of the line of the original shore owned by him.
348 So.2d at 360. See also Bliss v. Kinsey, 233 So.2d 191 (Fla. 2d DCA 1970); American Law of Property, Vol. 3 § 15.31 (1952).
In equitably apportioning lands acquired through accretion or reliction, many methods may be used, see, e.g., Clark, On Surveying and Boundaries (3d ed. 1959), but no one method is proper or improper. In the instant case, the trial judge visited the properties in question and in his final judgment extended the common boundary in a straight line, saying that to extend the boundary in any other manner would directly contradict the intent stated in the plats. The court is not bound by the terms of the plats or by law to apply any particular method of apportioning between property owners lands formed by accretion or reliction. While in this instance a straight line extension may be the method to achieve the most equitable apportionment of the lands formed by accretion or reliction, if the trial judge felt bound to use this method to the exclusion of other equitable principles, this was error. If, however, he chose the straight line method as the most equitable means of apportionment, no error occurred. Because we cannot determine on what basis the trial court acted, we reverse for the entry of a judgment determining the common boundary between the lots in question based upon the most equitable means of apportionment. In doing so the trial judge is not precluded from locating that boundary in the same place as he did in the final judgment appealed from, if he does so by applying the equitable principles we have discussed. His determination of the northern boundary extension of the Gillilans' lot and the southern boundary extension of the Knightons' lot was beyond the scope of the pleadings and involves rights of parties not before the court. We, therefore, reverse that portion of the final judgment pertaining to those boundaries.
REVERSED and REMANDED for findings.
BOARDMAN, A.C.J., and GRIMES, J., concur.
NOTES
[1] "Accretion is the gradual and imperceptible depositing of solid materials from the water, such as mud, sand, or sediment along the shore of the riparian [littoral] upland... . Reliction is the term applied to land formerly covered by water which has become uncovered by recession of the water from the land." Dean, Riparian Rights to Navigable Water, 15 Fla.B.J., 247, 248 (Mar. 1981).
[2] The term alluvion is sometimes used interchangeably with accretion. Accretion is the act of deposit while alluvion denotes the result. See Mexico Beach Corp. v. St. Joe Paper Co., 97 So.2d 708 (Fla. 1st DCA 1957); Black's Law Dict. 19, 70 (5th ed. 1979).