Mr. Thomas A. Bustin City Attorney City of Clearwater Post Office Box 4748 Clearwater, Florida 33518-4748
Dear Mr. Bustin:
This is in response to your request for an Attorney General Opinion on substantially the following questions:
 1. IS THE CITY OF CLEARWATER EMPOWERED TO REPEAL AN EXEMPTION RELATING TO RIPARIAN RIGHTS FROM AN ORDINANCE PROHIBITING BOAT TRAFFIC WITHIN 300 FEET OF DESIGNATED PUBLIC BEACHES?
 2. IF THE ANSWER TO QUESTION ONE IS IN THE AFFIRMATIVE, COULD THE CITY BE SUBJECT TO LIABILITY FOR COMPENSATION FOR THE TAKING OF AN ABUTTING PROPERTY OWNER'S RIPARIAN RIGHTS IF SUCH AN EXEMPTION WERE REPEALED?
Questions one and two are interrelated and will be answered together.
Your letter states that the City of Clearwater has enacted an ordinance prohibiting boat traffic within 300 feet of certain designated public beaches. The purpose of this regulation is to protect the safety and health of swimmers within that area. An ordinance recognizing the "riparian rights" of abutting property owners constitutes an exemption to the general prohibition of boat traffic within 300 feet of designated public beaches. Property owners along these designated beaches have been leasing their properties for commercial ventures. Among the commercial uses to which such property has been put is for the launching of paddle boats and other vessels for tourists which, in order to get to open water, must travel through the prohibited zone. The City of Clearwater is concerned that the exemption for "riparian rights" permits the frequent launching and mooring of vessels through the protected area, thereby effectively defeating the purpose of the ordinance and is therefore considering repealing the ordinance. Repeal of the ordinance recognizing the exemption for "riparian rights" would be accomplished by enactment of a municipal ordinance to that effect.
For purposes of exactness it should be noted that although the terms are often used interchangeably and the rights they entail are the same, "riparian rights" are those which are connected with or follow the ownership of banks and streams and rivers while the rights associated with lands bordering on tidewaters are "littoral rights." See, Johnson v. McCowen, 348 So.2d 357, 360 (1 D.C.A.Fla., 1977); Gillilan v. Knighton, 420 So.2d 924, 925 (2 D.C.A.Fla., 1982). While your original questions make reference to "riparian rights" it appears that the rights of littoral proprietors are involved, i.e., rights incident to ownership of land adjacent to tidewaters, and such terminology will be used when appropriate. I would note, however, that even the courts in Florida use such terms interchangeably and s 197.228, F.S., which defines riparian rights does not distinguish between different types of navigable waters. Therefore, in the discussion of cases herein, the terminology of the particular court is maintained.
I must assume for purposes of this discussion that those persons asserting and exercising littoral rights own land contiguous to the ordinary high watermark on the designated beaches. See, 65 C.J.S. Navigable Waters s 63. Moreover, I am advised and an examination of Ch. 73-434, Laws of Florida, reveals that the municipal boundaries of the City of Clearwater encompass the area to be regulated as such boundaries extend west into the Gulf of Mexico to the territorial limits of the state.
Section 2(b), Art. VIII, State Const., provides in pertinent part that:
 Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law. . . .
The Florida Supreme Court has stated that this constitutional provision "expressly grants to every municipality in this state authority to conduct municipal government, perform municipal functions, and render municipal services." State v. City of Sunrise, 354 So.2d 1206, 1209 (Fla. 1978). The court stated, in the City of Sunrise case, that the only limitation on the power of municipalities under this constitutional section is that such power must be exercised for a valid municipal purpose. As determined by the court, "[l]egislative statutes are relevant only to determine limitations of authority" and municipalities need no further authorization from the Legislature to conduct municipal government. Supra at 1209. See also, City of Miami Beach v. Forte Towers, Inc., 305 So.2d 764 (Fla. 1974). Pursuant to s 166.021(1), F.S., municipalities are granted "the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law."
The general legal principle applicable to your inquiry, subject to the conditions and limitations discussed herein, is that a municipality has civil and criminal jurisdiction over property within its corporate boundaries and may regulate and restrict certain activities reasonably calculated to protect the public health, safety and welfare. See, 64 C.J.S. Municipal Corporations s 1816; Carter v. Town of Palm Beach, 237 So.2d 130 (Fla. 1970); City of Miami Beach v. Texas Co., 194 So. 368 (Fla. 1940); Metropolitan Dade County v. Pierce, 236 So.2d 202 (3 D.C.A.Fla., 1970); and AGO's 79-71, 77-139 and 60-139. The power of municipalities to so regulate, however, is subject to the state's paramount power to regulate and control the use of its sovereign lands. To the extent that any such regulation has been preempted by the state or is inconsistent with general law or with regulations adopted by the state, any attempted municipal regulation would be invalid. See, s 166.021, F.S.; City of Miami v. Forte Towers, Inc., 305 So.2d 764 (Fla. 1974); AGO's 78-141, 75-167, 74-286 and 73-463. In addition, a further limitation on a municipality's power to regulate in this area and as a corollary to the requirement that such regulation and restrictions be in furtherance of the public health, safety and welfare, is the requirement that such regulation not be violative of the constitutional protections afforded to the public for the use of and access to state sovereignty lands. See, s 11, Art. X, State Const. (title to land under navigable waters within boundaries of state which have not been alienated are held by the state by virtue of its sovereignty in trust for all the people); McDowell v. Trustees of Internal Improvement Fund, 90 So.2d 715 (Fla. 1956); White v. Hughes, 190 So. 446 (Fla. 1939); AGO 79-71 (foreshore area of beaches between mean high and low watermarks and under Ch. 161 area seaward of beach erosion control line, the traditional uses for which are fishing, swimming, boating and other public purposes authorized by law, are held in trust for the public). And see, Carter v. Town of Palm Beach, 237 So.2d 130 (Fla. 1970), wherein the court held that while the town may regulate and control surfing and skimming in areas subject to its jurisdiction and may prohibit these activities at certain places along the beach, the complete prohibition of this sport is arbitrary and unreasonable).
The regulation of boating, boat liveries and related activities is permissible by municipalities only to the extent that such regulation is not inconsistent or in conflict with the provisions of Ch. 327, F.S., or any regulations adopted thereunder. Pursuant to s 327.46, F.S., the Department of Natural Resources has the authority to establish by rule restricted areas on the waters of the state for any purpose deemed necessary for the safety of the public, including but not limited to boat speeds and boat traffic where such restrictions are deemed necessary based upon boating accidents, visibility, tides, congestion or other navigational hazards. Each such restricted area is to be developed in consultation and coordination with the governing body of the county or municipality in which the restricted area is located and, where required, with the United States Army Corps of Engineers. See, s 327.60(1), F.S., providing that the enumerated sections therein (which include s 327.46) shall govern the operation, equipment and all other matters relating to vessels operating upon the waterways; however, nothing in these sections shall be construed to prevent the adoption of any ordinance or local law relating to the operation and equipment of any vessel to the extent that such ordinance or local law is not in conflict with Ch. 327 or any amendments thereto or regulations thereunder. See also, s 327.60(2), F.S., prohibiting local government authorities from regulating the anchorage of non-live-aboard vessels engaged in the exercise of the rights of navigation. Cf., Ch. 161, F.S.
Based upon the provisions of s 327.46, F.S. (formerly s 371.522) this office in AGO 79-71 stated that a restriction imposed by a municipality on boating in certain areas of public beach waters should be made only after application to the Department of Natural Resources and a determination by that agency that such restrictions are "necessary for the safety of the public." In that opinion, this office concluded that a municipality may regulate in a reasonable manner the matters of egress, ingress, boating, bathing and fishing in the area of a public beach within its territorial limits to protect the public health, safety and welfare if such regulation has a rational relation to and is reasonably designed to accomplish a purpose necessary for the protection of the public. A municipality may not, however, prohibit an otherwise lawful activity on or use of such public beach which is not inherently dangerous to the public or a nuisance per se or otherwise exercise its police powers in an arbitrary, capricious or unreasonable manner, nor may it exercise its police power over those activities or subjects or in those areas preempted to the state or which are in conflict with the state's paramount power to regulate or control its sovereign lands held in trust for all the people.
Implicit in your inquiry is the question of whether a municipality may regulate or limit the littoral rights of upland property owners since by repealing the present exemption for such property owners, they too would be subject to the prohibition against boating within 300 feet of the designated beaches. Section 197.228, F.S. (formerly ss 192.61[1]-[4], F.S. 1953; 271.09, F.S. 1955; 197.315[3], F.S. 1969) undertakes to define riparian rights and has been recognized by the Florida Supreme Court as a partial codification of the common law on the subject. Webb v. Giddens, 82 So.2d 743, 745 (Fla. 1955). The statute provides in pertinent part:
 Riparian rights are those incident to land bordering upon navigable waters. They are rights of ingress, egress, boating, bathing and fishing and such others as may be or have been defined by law. Such rights are not of a proprietary nature. They are rights inuring to the owner of the riparian land but are not owned by him. They are appurtenant to and are inseparable from the riparian land. The land to which the owner holds title must extend to the ordinary high watermark of the navigable water in order that riparian rights may attach. Conveyance of title to or lease of the riparian land entitles the grantee to the riparian rights running therewith whether or not mentioned in the deed or lease of the upland.
Section 197.228(1), F.S. But see, Feller v. Eau Gallie Yacht Basin, Inc., 397 So.2d 1155 (5 D.C.A.Fla., 1981) (riparian rights exist as a matter of constitutional rights and property law and are not dependent on the statute).
The Florida Supreme Court, in White v. Hughes, 190 So. 446, 448
(Fla. 1939), stated that a riparian or littoral proprietor who owns to the ordinary high watermark of the ocean or gulf or other navigable waters, has common law rights in the adjacent waters, such as access to the waters, with the rights of bathing and fishing in and navigation over such waters, in common with the general public, subject to lawful regulation by the sovereign state in the interest of the public, and subject to the authority of Congress as to commerce and navigation. See also, Thiesen v. Gulf, F. A. Ry. Co., 78 So. 491 (Fla. 1917); Brickell v. Trammell, 82 So. 221 (Fla. 1919); Freed v. Miami Beach Pier Corp.,112 So. 841 (Fla. 1927). And see, Broward v. Mabry, 50 So. 826, 830
(Fla. 1909) ("Those who own land extending to ordinary high-water mark of navigable waters are riparian holders who, by implication of law, and in addition to the rights of navigation, commerce, fishing, boating, etc., common to the public, have in general certain special rights in the use of waters opposite their holdings; among them being the right of access from the water to the riparian land and perhaps other easements allowed by law. These special rights are easements incident to the riparian holdings, and are property rights that may be regulated by law, but may not be taken without just compensation and due process of law"). Kendry v. State Road Department, 213 So.2d 23, 28 (4 D.C.A.Fla., 1968), and Board of Trustees of the Internal Improvement Trust Fund v. Medeira Beach Nominee, Inc.,272 So.2d 209, 214 (2 D.C.A.Fla., 1973), in which the court recognized that the status of beachfront property owners as riparian owners has historically entitled them to greater rights with respect to the waters which border their land, then inure to the public generally and stated that "[t]he impact of governmental regulation on the rights to swim and fish may be greater on the riparian than on the public. Thus, a police power regulation prohibiting swimming, fishing, or boating may be unchallengable [sic] by the public but constitute a taking with respect to the riparian." And see, Ferry Pass Inspectors' Shippers' Association v. Whites River Inspectors' Shippers' Association, 48 So. 643, 644-645
(Fla. 1909), providing:
 Among the common-law rights of those who own land bordering on navigable waters . . . are the right of access to the water from the land for navigation and other purposes expressed or implied by law . . . the right to protect the abutting property from trespass and from injury by the improper use of the water for navigation or other purposes, the right to prevent obstruction to navigation or an unlawful use of the water or of the shore or bed that specially injures the riparian owner in the use of his property, the right to use the water in common with the public for navigation, fishing, and other purposes in which the public has an interest. Subject to the superior rights of the public as to navigation and commerce, and to the concurrent rights of the public as to fishing and bathing and the like, a riparian owner may erect upon the bed and shores adjacent to his riparian holdings bath houses, wharves, or other structures to facilitate his business or pleasure; but these privileges are subject to the rights of the public to be enforced by proper public authority or by individuals who are specially and unlawfully injured. . . . The exclusive rights of a riparian owner are such as are necessary for the use and enjoyment of his abutting property and the business lawfully conducted thereon; and these rights may not be so exercised as to injure others in their lawful rights.
Cf., s 161.201, F.S., which clearly evinces a legislative intent to preserve to upland owners all their common law riparian rights except as provided in s 161.191(2); these protected rights include but are not limited to rights of ingress, egress, view, boating, bathing and fishing.
In the case of Webb v. Giddens, 82 So.2d 743, 745 (Fla. 1955), the Florida Supreme Court approved the lower court decision, holding that one common law riparian right was ingress and egress to and from the owner's land over the water and that the denial of ingress and egress deprived the owner of "a practical incident of his riparian proprietorship." And see, Game and Fresh Water Fish Commission v. Lake Islands, Ltd., 407 So.2d 189, 193 (Fla. 1981), in which the Webb case is discussed and cited as persuasive authority for the proposition that: 1) for travel over a navigable body of water to be materially obstructed by the state there must be an overriding public interest that justifies depriving either the public or the riparian of the enjoyment of this right, and 2) whether such an obstruction is called a public nuisance from which the riparian owner sustains special injury, or whether it is called a private nuisance as to him, the riparian owner has the individual right to object and to have the courts hear his objection.
Thus the rights of riparian or littoral landowners may not arbitrarily be abrogated or restricted by the state or local government without a real relation to legitimate governmental purposes. 65 C.J.S. Navigable Waters s 61b. Furthermore, the rights of riparian or littoral landowners are at times greater than those of the general public. Therefore any such restriction or other regulation, unless necessary to protect the public health, welfare, safety or morals, would be injurious to the riparian or littoral rights of the upland owner and would thus be invalid. However, such a determination in the instant case presents mixed questions of law and fact which this office cannot undertake.
Section 6(a), Art. X, State Const., provides that private property shall not be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the court registry and available to the owner. It has been a settled principle of law in this state for a number of years that riparian or littoral rights are property rights that may not be taken without just compensation. See, Thiesen v. Gulf, F. A. Ry. Co., 78 So. 491, 507 (Fla. 1917); Brickell v. Trammell, 82 So. 221,227 (Fla. 1919); and AGO 79-71. See generally, 65 C.J.S. Navigable Waters s 61a, wherein it is stated that riparian or littoral rights of owners of lands are derived from the common law as modified by statute and are property rights "of a qualified or restricted nature of which the owner ordinarily cannot be deprived without his consent or without proper compensation." See also, White v. Hughes, 190 So. 446 (Fla. 1939); Eustis v. Firster,113 So.2d 260 (2 D.C.A.Fla., 1959); Broward v. Mabry, supra (riparian rights, including right of access, are property rights that may be regulated by law but may not be taken without just compensation and due process of law). Therefore, while an ordinance repealing an exemption for littoral owners along certain public beaches may represent an appropriate exercise of municipal legislative power, the provisions of s 6(a), Art. X, State Const., would appear to directly affect any such action by the municipality and require that full compensation be paid for the taking of such rights.
In sum, it is my opinion that the City of Clearwater is empowered pursuant to Ch. 166, F.S., and s 2(b), Art. VIII, State Const., to enact an ordinance repealing an exemption for littoral proprietors from municipal legislation prohibiting boat traffic within 300 feet of designated public beaches to protect the public health, safety and welfare. However, as Florida courts have determined that riparian and littoral rights are property rights that may not be taken without just compensation, a limitation of or complete prohibition of the exercise of such littoral rights as ingress and egress to and from the owner's land over the water may subject the municipality to liability for just compensation for the taking of such rights.
Sincerely,
Jim Smith Attorney General
Prepared by:
Gerry Hammond Assistant Attorney General