DAVID HEATON & al. vs. THOMAS HODGES.

Where by the terms of the grant of a tract of land, a line commences at a known monument, and from thence runs in a certain course a specified distance to another monument, but which latter monument was never erected, or cannot be found, the grant is limited to the distance specified, to be ascertained by admeasurement.

Where a grant of land is made with reference to a plan, the survey actually made at the time, if it can be ascertained, is to govern; but if no survey was made, or if it cannot be ascertained, and no natural monuments marked on the plan upon the line exist; the extent of the line is to be settled by the length of line given on the plan, according to its scale, exactly measured.

And this rule applies, although it should be found, by measuring from one monument to another, given on a different part of the plan, that large measure was made on that part.

THIS was a writ of entry on the seisin of the demandants. They derived their title to the lot in question, being 95 containing 110 acres, from *Knapp* and associates to whom the Commonwealth of *Massachusetts* granted the territory, now embraced within the limits of *Brewer & Orrington*, on the 29th of *June*, 1785, the deed being recorded *May* 2, 1798. The tenant claimed title under the grant of the Provincial Legislature of *Massachusetts*, of six Townships on the east side of *Penobscot* river, made on the 2d of *March*, 1762, of which *Bucksport* was one, and it was admitted that the tenant had title to lot No. 196, from the proprietors of said township. The resolves of the Legislature of *Massachusetts* passed *March* 17, 1785, and *July* 8, 1786, confirmed the grant of 1762. Said lots are laid down on the allotments of said towns respectively, and partly cover each other, and the only question between the parties is, where the northerly corner of *Bucksport* is located in said grant of 1762. The parties agree that the line between said grants on *Penobscot* river commences at where a hemlock tree stood and runs north 70° east. The grant to the proprietors of *Bucksport* gives the length of the line 5 miles and 184 rods to a stone monument, but no such monument can be found. It appears from marked trees on said line, that it was run so long ago as forty-four years. The tenant claims, as the corner of *Bucksport*, a beach tree, now fallen down which stood on the true course of said line, and about 178 rods greater measure, than that mentioned in the grant. There was evi-

dence that the beech tree was known and claimed as a corner by the proprietors of *Bucksport*, as early as the year 1801, when the lots on the back line of that town were run out, when the tree was alive, but the surveyor, *Greeley*, could not recollect the age of the marks upon it at that time. The demandants also proved that the south-westerly line of *Brewer* was run out as early as 48 or 49 years ago, and that a birch stump on said line, where it is intersected by the line aforesaid, leading from the hemlock on *Penobscot* river to the beech tree, claimed by the tenant as the corner of *Bucksport*, was marked 5 miles 184 rods; and according to the survey made by *Addison Dodge*, appointed by the Court in this case, this birch stump was five miles 198 rods and 20 links from the hemlock tree on *Penobscot* river. From the south to north line of *Brewer*, was 6 miles 22 rods and 20 links. If the birch stump, or a point nearer *Penobscot* river, is the true corner of *Bucksport*, the demandants maintained their action; but if the beech tree is the true corner, then the tenant maintained his defence. The tenant introduced the testimony of the surveyor to show, that he had measured the plan returned by the original surveyors, which was adopted by the *Provincial Legislature*, and which was to be referred to in the case, in two or three instances, where the distance was marked on the plan, and measured the distance upon the face of the earth; and also several instances where he measured the plan and compared the actual admeasurement from the same points on the earth, and found that the surveyors had allowed an excess of ten or twelve *per cent.*; the defendant also proved by the testimony of *Philip Greeley*, that he had been acquainted with surveys made 40 or 50 years ago, and had uniformly found an excess as great as ten *per cent.* The counsel for the tenant contended that inasmuch, as it appeared, that at the time this survey was made, an excess of ten or twelve *per cent.* had been allowed by the surveyors in other parts of the lines of said township, and generally in the survey of the six townships, to preserve consistency in the said survey, the jury ought to allow the same excess on the line from the hemlock on *Penobscot* river to the beech tree claimed as the corner of *Bucksport* by the tenant; and he requested the Court so to instruct the jury. There was no scale on the plan of the six townships, referred to in the original grant of the township, now *Bucksport*, and

the five other towns. The demandants had proved that the lines running from the birch stump were the more ancient. *Weston C. J.*, at the trial, instructed the jury that the original survey, if it could be ascertained, would govern the location; and that, if that could not be shewn, the distances on the plan, if made by a scale, should be taken; but if there were no scale on the plan, and the original location could not be proved, the termination of the line from the hemlock was to be fixed by measuring the distance given in the grant, exactly on the face of the earth. The jury returned their verdict for the demandants. If they were not properly instructed, the verdict was to be set aside, and a new trial granted.

When the case came on for argument, the plan was produced, and it was discovered, that there was a scale upon it, and that it was protracted upon a scale of 160 rods to an inch; and that the length of the line in dispute, as laid down on the plan, was precisely eleven inches.

The case was briefly argued by *Mellen* and *Abbott*, for the tenant; who contended, that the only correct and legitimate mode of proceeding in ascertaining the termination of the line extending from the river, as the stone monument could not be found, was to take the ratio of large measure, proved to have been made by the actual measurement of portions of the plan, where monuments could be found, and apply that ratio to all the lines, where existing monuments did not forbid.

And by *J. McGaw* and *F. H. Allen*, for the demandants; who contended, that they were entitled to recover, either on the ground, that the line of the defendant extended only to the birch; or by ascertaining the distance by applying the scale on the plan, 160 rods to an inch, which would give a shorter line still, five miles and 160 rods.

*Mellen*, afterwards submitted a written argument, which is sufficiently noticed in the opinion of the Court.

After a continuance for advisement, the opinion of the Court was drawn up by

WESTON C. J. — The title of both parties originates from the same source. But the tenant deduces his from an elder grant; and he has a right therefore to have his lot located according to that

grant, whether it does or does not conflict with the title of the demandants. The starting point at *Penobscot* river, from which the line in controversy is to be run, and the course of that line are known and agreed. By the grant, under which the tenant claims, that line was to be five miles and one hundred and eighty-four rods in length, and to terminate at a stone monument. That monument, or the place where it stood, cannot now be ascertained. If the terminating point is not to be located more than five miles, one hundred and ninety-eight rods and twenty links from *Penobscot* river, the demandants have prevailed in their action.

The grant before stated, was made or confirmed with reference to a plan. It was understood on both sides at the trial, that there was not to be found on that plan, any scale, by which it was delineated. It has since been discovered, by a more thorough examination, that it was protracted upon a scale of one hundred and sixty rods to an inch. And it appears, that the length of the line in dispute, as there laid down, is exactly eleven inches. This is equal only to five miles and an hundred and sixty rods. Whether upon this state of facts, the length of line, as deduced from the plan, or that which is actually given in the grant, is to govern, we are under no necessity of determining. If the tenant is to be restricted to either, upon exact measure, he fails in his title.

But it is contended, that from the plan, and other facts proved at the trial, such large measure should be accorded to him, as would give him the demanded premises. And there is reason to believe, from those facts, as well as from the known and acknowledged liberality of admeasurement in the surveys of that period, that such would be the result, applying to this line the same ratio of extension and enlargement. And if this were a question now for the first time presented, not having been before settled by the decisions and practice of our Courts, the argument, submitted by the senior counsel for the tenant, would be entitled to great weight and consideration. But a different rule having heretofore been adopted, we feel constrained to regard it as no longer an open question.

It is of the highest importance, that settled rules of law, affecting the title to real estates, should be adhered to and preserved. The true location of lots of land, made with reference to plans, as ancient as that under consideration, delineating lines, some of which

had been made from actual survey, and others platted without be-
ing surveyed, has frequently been before the Supreme Judicial
Court, both before and since our separation.   We have understood
the rule applied in such cases has been, that the survey actually
made, if it can be ascertained, is to govern the location.   But if
that could not be shown, or if none was made, and the lines were
not drawn with reference to natural monuments, they were to be
settled by the length of line given on the plan, according to its
scale, exactly measured.   It may have been deemed, that a de-
parture from this rule, would be productive of too much uncertainty,
from the want of uniformity in the excess of admeasurement allow-
ed by different surveyors, as well as in that, which may have been
made by the same surveyor.

·We have been referred to no adjudged case in the reports, pre-
senting this question, prior to the separation.   A decision, however,
was made upon it by the whole Court, in *Bowman* v. *White*, in
1801, prior to the commencement of the *Massachusetts Reports*,
which is noticed in *Loring* v. *Norton*, 8 *Greenl.* 61.   Since the
separation, the case of the *Proprietors of the Kennebec Purchase*
v. *Tiffany*, 1 *Greenl.* 219, may be regarded as being directly in
point.   The tenant's title there, depended upon *Winslow's* plan,
made in 1761.   *Winslow* surveyed and fronted the lots on *Kenne-
bec* river, there marking the corners of each ; and upon this base,
he platted on his plan three tiers or ranges of lots, west of the river,
each represented, by the scale on the plan, as one mile in length,
and fifty rods in width ; but he did not actually run any lines, or
make any corners, except at the river.   The space between the
corners of each lot at the river, was generally found to be fifty-four
rods, instead of fifty.

It thus appeared, that the excess of admeasurement made by
*Winslow*, was about eight per cent.   Accordingly when *Dr. Mc-
Kecknie* was employed by the proprietors, seven years afterwards,
to survey a tract further west, but adjoining that laid down on
*Winslow's* plan, in order to ascertain the westerly line of *Winslow's*
lots, he measured three miles and seventy-two rods, instead of three
miles, allowing about the same excess, which *Winslow* did in his
survey on the river.   We are not aware, that a single argument has
been urged, in favor of liberal admeasurement, in the case before

us, which did not apply with equal force in that case. *Winslow's* rod was proved to be longer by four parts in fifty, than the exact rod. His rod was necessarily applied, in ascertaining the width of each lot, and why was it not adopted also in ascertaining its length? *McKecknie,* an experienced surveyor of that day, so applied it. But the Court overruled this practical, but subsequent location, made in that early day, by a surveyor of the proprietors, and applied the exact rod to *Winslow's* scale, in determining how far his lots should extend westerly from the river.

The late Chief Justice of this Court, who had been many years in extensive practice, prior to our separation, sustains his opinion in that case, by a reference to the application of the same rule to a tract of land, on the eastern side of the river. The result was, that on both sides, upon the principle of exact measurement, the proprietors succeeded in establishing their claim to a strip of land between tracts, before supposed by their surveyors and themselves, to have been contiguous. A stronger case for the application of the rule now contended for, cannot well be imagined. And yet we doubt not both those decisions were in accordance with what had been previously settled and decided in *Massachusetts. Loring* v. *Norton,* where the opinion of the Court was delivered by Judge *Parris,* was decided upon the same principles.

In the case under consideration, neither the length of line given in the grant, or deduced from the plan, exactly measured, will give the tenant any part of the land defended; and in our judgment no other rule, than that of exact measurement, can be legally applied.

*Judgment on the verdict.*