Kean *v.* Roby *et al.*

KEAN *v.* ROBY ET AL.

[No. 15,903, Filed January 21, 1896. Rehearing denied May 28, 1896.]

SWAMP LANDS.—*Survey.—Sufficiency Of.—Statute Construed.*—Under section 2395, U. S. R. S., a sufficient survey of lands is made which runs parallel lines each way, at intervals of two miles, and makes a corner on each line at the end of every mile; and which is completed under section 2396, U. S. R. S., by running straight lines from the established corners to the opposite corresponding corners, and where no such opposite or corresponding corners have been or can be fixed, by running from the established corners due north and south, or east and west, as the case may be, to the watercourse or other external boundary of such fractional township, and such limit of survey extends over both land and water.

SWAMP LAND ACT.—*Re-survey.—Affirmance by Land Office.*—Where lands were fully surveyed in the original survey, and were conveyed by the United States to the State by the swamp land act of 1850, the title of such lands passed to the State by virtue of said act, notwithstanding a re-survey thereof was afterward made by the land department.

From the Lake Circuit Court.    *Affirmed.*

*W. P. Fennell,* and *Mason & Latta,* for appellant.

*Miller, Winter & Elam,* for appellees.

HOWARD, J.—This was an action to quiet title to real estate, brought by the appellee, Sophia A. Conklin, against the appellant and other defendants, made appellees on this appeal.   Various answers and cross-complaints were filed by the appellant and by other defendants, and the cause was submitted to the court

for trial, resulting in a finding and decree against the plaintiff.

A new trial having been granted, as of right under the statute, the cause was resubmitted to the court for trial upon the pleadings in the first trial. There was a special finding of facts on this second trial, with conclusions of law, and a decree against the plaintiff, and also against the appellant and others, and in favor of certain of the appellees; and the appellant, as also the plaintiffs and others named, were enjoined from setting up or asserting any claim or title to the land in question.

Many alleged errors are assigned by the appellant, most of which are irregular, and could be considered only as reasons for a new trial. Neither party, however, has given special attention to the assignment of errors; both prefering to discuss the controlling facts and the law in relation thereto.

The land in controversy is situated in Lake county, in the extreme northwest corner of the State. It is described in the complaint as: "Lot number 5, in section 36, township 38 north; lots 8, 9, and 10, in section 1, township 37 north, and lots 5, 6, 7, and 8, in section 12, township 37 north, all in range 10 west, Lake county, Indiana, and containing 252.5 acres, more or less."

The appellant, in her cross-complaint, made claim to the same land, "in plaintiff's complaint described," and asked that her title thereto be quieted as against the plaintiff and all of her co-defendants; and that they be enjoined from setting up any claim thereto.

The appellees, who are in possession of the lands in controversy, claim title under the original government survey, by virtue of patents from the United States to

the State of Indiana, and from the State to their remote grantors.

Townships 38 and 37 north, range 10 west, in which the lands are situated, were originally surveyed in 1834, under authority of the United States land department, as shown by the field notes and plats made a part of the record. These townships are both fractional, lying next to the State line dividing Indiana from Illinois, and are in part covered by a body of water known as Wolf lake.

The appellees claim that title to all of these lands passed from the general government to the State of Indiana by the Swamp land act of September 28, 1850, subject only to identification and selection by the State and approval thereof by the Secretary of the Interior. The patent from the United States to the State is dated March 24, 1853. In this patent it is recited that "The United States of America, in consideration of the premises and in conformity with the act of Congress aforesaid, have given and granted, and by these presents do give and grant, unto the said State of Indiana, in fee-simple, subject to the disposal of the legislature thereof, the tracts of land above described." The tracts so described include: "The whole of fractional sections 1, 12  *  *  all in township 37 north, of range 10 west;  *  *  *  also the whole of fractional section 36, in township 38 north, of range 10 west." The court found the title thus traced by appellees to be good, and held that they were entitled to continue in possession of the lands in dispute.

The appellant contends that the bed of Wolf lake, covering a part of the above described sections, as aforesaid, was not surveyed in the original survey of 1834; and shows that on representations to that effect,

made to the land department of the United States, the commissioner of the general land office ordered a re-survey of the land within the meander lines of the lake, which re-survey was made in 1875. Appellant then claims that on such re-survey, by the land department, the lots in the lake bed became subject to entry and sale, and subject also to the right of appellant's remote grantors to locate "Sioux half-breed scrip" thereon; and she traces her title from patents issued for said lots to such remote grantors on such location of half-breed scrip.

Appellees, on the other hand, contend that all said fractional sections, including the bed of Wolf lake, were surveyed in 1834, and the lands and lots sold by the United States under such survey, so that, right-fully, the government had no such land to survey or sell when the order for the survey of 1875 was made and the lands in question attempted to be resold by the land department.

As the appellant must succeed, if at all, on the strength of her own title, it will be sufficient to decide the contention here made. If the lands in controversy were, in fact, surveyed in 1834, and sold by the United States under such survey, then it is clear enough that the government had no authority or power to re-survey the lands in 1875, or to sell them over again, and appellant's title must wholly fail.

The annexed plats show the original survey, in 1834, of section 36, in township 38, and of sections 1 and 12, in township 37; and also the re-survey, in 1875, of that part of the bed of Wolf lake, in the same townships and sections, being all that is necessary to indicate the location of the lands in dispute.

We are of opinion that in the original survey of 1834, both townships in question, and all of the sections were fully surveyed, including the bed of Wolf lake.

The plat, with the chains marked thereon, shows that the townships are both fractional. Township 38 consists only of fractional section 36, lying between the Illinois line and Lake Michigan. Township 37 is less than a mile in width, extending from the east township line west to the State line. The field notes show that the east section line, and also the west line, being the State line, were actually run; and that the section corners on said east section line of sections 1 and 12 were marked. The field notes also show that the east and west line between townships 38 and 37, being the north line of section 1, township 37, was actually run, except a short distance in the northeast corner, which extends into Lake Michigan; also that the east and west section line between sections 1 and 12, township 37, was run; also that the east and west section line on the south side of section 12, township 37, was run from the southeast corner of said section west to the lake, this line not being extended in the field across to the State line, or west line of the section. The field notes further show, as does the plat, that all the interior lines of section 36, in township 38, and the greater part of those in sections 1 and 12, in township 37, were actually run and the corners marked in the field.

Under the provisions of sections 2395 and 2396, R. S. U. S., the foregoing was a sufficient survey of the townships and sections named. By section 2395, R. S., *supra*, it is made a sufficient survey to run "each way, parallel lines at the end of every two miles; and by marking a corner on each of such lines, at the end of every mile." In the foregoing survey the east and

west section lines, as actually run, are less than a mile apart. All the lines, interior and exterior, of section 36, township 38, are actually run; so also are all the lines, interior and exterior, of section 1, township 37. For section 12, township 37, the north line is actually run.

There remains only the south line of said section 12, a part only of which is run. For this defect, if it should be considered such, section 2396, U. S. R. S., *supra*, provides as follows: "The boundary-lines which have not been actually run and marked shall be ascertained, by running straight lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships where no such opposite corresponding corners have been or can be fixed, the boundary-lines shall be ascertained by running from the established corners due north and south, or east and west lines, as the case may be, to the watercourse, Indiana boundary-line, or other external boundary of such fractional township." Following this direction, the south line of section 12 will be found by "running from the established corner," at the southeast corner of said section, a "due east and west line, west to the State line, being the west external boundary of such fractional township."

It appears, therefore, that township 37, as well as township 38, was fully surveyed in the original survey of 1834; that the lines of the survey extend over both land and water, and that the United States conveyed to the State the fractional townships so surveyed.

It follows that all the territory in question, in the two townships, including that covered by Wolf lake, as well as the comparatively dry land on its borders, having passed to the State from the ownership of the United States by the Swamp land act of 1850, and the patents issued to the State therefor in 1853, no land

in said sections remained, whether under Wolf lake or elsewhere, which could be re-surveyed or resold by the general government. The survey of 1875, and the sales thereunder, were nullities. Appellant, therefore, has no title to the lands claimed by her. See *Tolleston Club* v. *State*, 141 Ind. 197, where a similar question is considered, and a like decision reached.

Two objections made to this conclusion may be noticed:

First. It is said that the validity of the re-survey of 1875 having been affirmed by the United States land department, which department had full jurisdiction of the matter, the question is not reviewable in the courts. It is true, as said in *Hardin* v. *Jordan*, 140 U. S. 371, that the decision of the land department on matters of fact within its jurisdiction, made in the course of administration, cannot be called in question collaterally.

But, as said in the same case by the Supreme Court of the United States: "If the lands patented were not at the time public property, *having been previously disposed of,* * * * the department had no jurisdiction to transfer the lands, and their attempted conveyance by patent is inoperative and void." See also *Mitchell* v. *Smale*, 140 U. S. 406.

The other objection made is, that in the Beaver lake case, *State* v. *Portsmouth Sav. Bank*, 106 Ind. 435, this court decided that the sale of the border lots on Beaver lake, under the original government survey, did not carry title to the lands covered by the waters of the lake. The case is not in point, for the very good reason that in the Beaver lake case the lands under the lake were not surveyed; the survey ceased at the borders of the lake. In the case of Wolf lake, however, as we have seen, the lake itself was included in the survey; the section lines passed over and included

the waters as well as the land. Had Beaver lake been actually surveyed, as Wolf lake was, the matter would be different; as it is, that case is not in point. The case at bar is ruled by the *Tolleston Club* case, *supra*. The judgment is affirmed.