## AYERS v. HUDDLESTON ET AL.

[No. 4,221. Filed January 7, 1903.]

BOUNDARIES.—*Description.*—Where there is nothing to control the call for courses and distances in the description of real estate, except a river as one of the boundary lines, the other boundary lines will be determined by the courses and distances of the conveyances according to the magnetic meridian.   *p. 249.*

SAME.—*Questions of Law and Fact.*—The question as to what constitutes the boundaries of a particular tract of land is a matter of law, but the location of such boundaries is a question of fact. *pp. 249-251.*

SAME.—*Survey.*—*Description in Deed.*—The draft of certain lines in a plat and the description of them in a deed are only evidence of the actual survey; the lines marked on the ground constitute the actual survey, and the location of the lines is a matter of fact for the determination of the jury from all the evidence.   *p. 251.*

SAME.—*Demand for Survey.*—*Evidence.*—No error was committed in sustaining an objection to a question propounded to plaintiff as a witness in an action to determine the boundary line between two lots as to whether he had made a demand upon defendants for a legal survey, where the offer to prove does not show that defend-

ants refused to join in such survey, or that they had any opportunity to comply with the demand before suit was brought. *pp. 251, 252.*

From Fayette Circuit Court; *F. S. Swift*, Judge.

Action by Silas Ayers against Hannah Huddleston and others for the location of a boundary line. From a judgment in favor of defendants, plaintiff appeals. *Affirmed.*

*F. H. Gray* and *H. L. Frost*, for appellant.
*Reuben Conner* and *Lon Conner*, for appellees.

ROBINSON, J.—The controversy in this case is as to the location of the line dividing the lands of appellant from those of the appellees. Appellant's complaint is in three paragraphs,—ejectment, to establish a boundary line, and to quiet title. Appellees had judgment. Error is assigned on the refusal of a new trial.

In April, 1857, Basil McCann conveyed to J. Holton & Co. the following: "All that lot of ground being in the northwest quarter of section number thirty, town number fourteen, range number thirteen east, lying east of the Whitewater river, commencing at the mouth of the Whitewater river bridge, on the range line, running eastwardly along the center of the Connersville and Liberty turnpike road thirty-seven and sixty one-hundredths rods; thence north to the bed of the river; thence down with the bed of the river to the place of beginning; the same to contain seven acres; being lot No. 1 in East Connersville, as laid out by Basil McCann." Subsequently this same lot was conveyed as a whole by the same description in a number of conveyances from 1857 to 1882, having been, at the last named date, conveyed to Jonathan Gise as, "Lot No. 1 in East Connersville, Fayette county, Indiana, commencing at the mouth of the river bridge, at a point where the range line crosses; running easterly along the center of the Liberty pike thirty-seven and sixty one-hundredths rods; thence north to the bed of the river; thence down with the bed

of the river to where the range line crosses the river, and with the range line to the place of beginning; the same to contain seven acres, more or less."

In October, 1857, Basil McCann acknowledged and caused to be recorded a plat of East Connersville. On this plat are a number of streets and lots; and a tract, with only the east and south boundaries given, is designated: "No. 1, Holton & Simpson, containing seven acres." No attempt seems to have been made to fix the limits or boundaries of the lot by this plat, nor are the lengths given of the only two sides of the lot shown in the plat. It is true, on the east side of the lot, and between it and lot two is platted a road, but no width is given. If the plat is drawn to a scale, this road must have been more than forty feet wide. So far as appears, this tract was never conveyed with reference to this plat, and so far as the questions here to be determined it need not be further noticed. As the plat had not been made and acknowledged at the time McCann made the deed in 1857, that conveyance could not have been made with reference to this plat.

In July, 1877, the town trustees of East Connersville caused the lands of the town to be platted and recorded. This plat was introduced in evidence, and designates the tract here in question as "Slaughter Company, No. 1, seven acres," and on the south boundary line of the lot are the figures "37 60-100." The line forming the western boundary line of this tract is designated on the plat as the range line between range twelve and range thirteen. No road is platted east of this tract, and what is designated as lot two lies immediately east; the east line of the former being the west line of the latter. Continuing east are other tracts designated as lots three, four, five, six, and seven. But upon another part of this plat, and within what is designated as the corporation line, is another series of lots designated as lots one, two, three, four, five, six, and seven. No

explanation is made upon the plat of this duplication of the numbers.

In April, 1885, Gise conveyed to Susan Chrismer a part of this lot by the following description: "A part of the northwest quarter of section thirty, town fourteen north, of range thirteen east, being a part of lot No. 1 in the village of East Connersville, in said county and State, bounded and described as follows: Beginning at a point on the Connersville and Liberty pike twenty-two and one-half feet from the center of the same at the southwest corner of lot No. 2 on Peter Godar's west line; running thence in a westerly direction along and parallel with the said pike 400 feet, more or less, to the lands of said Jonathan Gise; thence north 275 feet, more or less, to the bed of the Whitewater river; thence in a northeasterly direction along the bed of the said river to said Godar's west line of the northwest corner of said lot No. 2; thence south on a line parallel with the said west line of lot No. 2, 750 feet, more or less, to the place of beginning, excepting," a tract 140 feet square in the southeast corner thereof, theretofore conveyed by Gise to James McCann.

In February, 1887, Gise conveyed to Susan Chrismer a part of the lot by the following description: "The west part of lot No. 1 in East Connersville, Fayette county, Indiana, commencing at the mouth of the river bridge, at a point where the range line crosses the Connersville and Liberty turnpike; thence eastwardly along the center of the aforesaid turnpike to the southwest corner of that part of said lot formerly conveyed by deed to Susan Chrismer (said deed is recorded in deed record 5, page 501, of Fayette county, Indiana); thence northwardly along the west line of the aforesaid lot No. 1, 275 feet, more or less, to the bed of the Whitewater river; thence southwardly along the bed of said river to where the range line crosses the river; and thence with the range line to the place of beginning."

By these two conveyances Susan Chrismer became the owner of all that part of lot one now in question, and is the common grantor of the parties to this suit. The part conveyed to her by these deeds is indicated on the following plat as A, M, N, O, C.

In 1891 Susan Chrismer conveyed to Hannah Huddleston a part of this tract described as follows: "Beginning at a point on the north line of the Liberty road, and 356 feet west of the southeast corner of lot No. 1 in the town of East Connersville, in Fayette county, State of Indiana; running thence north, parallel with the east line of said lot No. 1, 126 feet; thence westwardly, parallel with the north line of the Liberty road, forty-four feet; thence southwardly, parallel with the east line of said lot No. 1, 126 feet to the north line of the Liberty road; thence eastwardly on the north line of the Liberty road forty-four feet to the place of beginning"—designated on the above plat as D, E, F, G.

Ayers *v.* Huddleston.

On May 8, 1900, Susan Chrismer conveyed to appellant a part of the same tract described as follows: "The west part of lot No. 1 in East Connersville, Indiana, and described as follows: Commencing at the mouth of the river bridge at a point where the range line crosses the Connersville and Liberty turnpike; thence eastwardly along the center of the aforesaid turnpike to a point within fourteen feet of the southwest corner of the part of said lot No. 1 conveyed by Susan Chrismer and James Chrismer, her husband, to Hannah Huddleston, by deed dated March 20, 1891, and recorded in town lot deed record No. 8, at page 48; thence northwardly, parallel with the west line of said Huddleston's lot, extended 275 feet, more or less, to the bed of the Whitewater river; thence southwardly along the bed of said river to where the range line crosses the river; and thence with the range line to the place of beginning,"— designated on the above plat as A, H, I.

On the 28th day of the same month, Susan Chrismer conveyed to appellant the following: "A part of the northwest quarter of section thirty, township fourteen north, of range number thirteen east, the same being a part of lot No. 1 in the town of East Connersville, in said county of Fayette and State of Indiana, and bounded as follows, viz.: Beginning at the southeast corner of the part of said lot conveyed by the grantors herein to the said grantee Silas Ayers by deed dated May 8, 1900, and recorded in deed records of town lots, No. 11, at page 233 of the deed records of Fayette county, Indiana; thence east fourteen feet to the southwest corner of Hannah Huddleston's lot; thence north, along the west line of Hannah Huddleston's lot, 126 feet, to the northwest corner of said Huddleston's lot; thence west fourteen feet to the east line of the part of said lot No. 1, conveyed by grantors herein to the grantee, and to which reference is heretofore made in this conveyance; thence south along the said grantee's east line 126 feet to the place of beginning," designated on the above plat H, D, G, K.

Appellant insists that appllee Huddleston has possession of a strip of ground, about four feet wide, west of the west line of her land as such west line should be located by the deed to her from Chrismer. Appellant's counsel argue that the dimensions of lot one should be determined by measurements beginning at the range line; that the southeast corner of the lot is 620.4 feet east of the range line; and that so locating such southeast corner, and taking from this south boundary line of lot one the distance D, B,—400 feet,—would leave the length of the south boundary line, A, D, of the tracts conveyed to appellant by Chrismer, 220.4 feet; that Huddleston's west line should be at a point 220.4 feet east of the range line, whereas in fact it is four feet and one inch west of that point.

It appears that this lot, when conveyed as a whole, was always conveyed by metes and bounds, and was never conveyed simply as lot one in the town of East Connersville. This was necessarily so for the reason that in the plat of 1857 the lot was an unbounded tract, lying in a right angle formed by the south and east lines, both of which were of undefined length; and in the plat of 1877 there are two lots numbered lot one. When conveyed as a whole the quantity of land conveyed was seven acres. The beginning point was the range line. So far as the descriptions contained in the deeds show, the southeast corner of the lot was not marked by any monument, natural or artificial, but was fixed as a certain distance east from the beginning point.

It is a general rule, of almost universal application, that if, in the description of a tract of land, monuments, courses, and distances, and a designated quantity are all given, the monuments have a controlling influence. If there are no monuments, and the other two are given, the courses and distances will control. And in the absence of monuments and courses and distances the designated quantity must determine. *Simonton* v. *Thompson,* 55 Ind. 87; *Allen* v.

*Kersey,* 104 Ind. 1; *Richwine* v. *Jones,* 140 Ind. 289; 3 Washburn, Real Property (4th ed.), 407 *et seq.; Bradford* v. *Hill,* 2 N. C. 22, 1 Am. Dec. 546; *Heaton* v. *Hodges,* 14 Me. 66, 30 Am. Dec. 731 note; *Overton* v. *Davisson,* 1 Gratt. 211, 42 Am. Dec. 544; *Newsom* v. *Pryor,* 7 Wheat. 7, 5 L. Ed. 382.

In this case, when the lot was conveyed as a whole, as there was nothing to control the call for courses and distances, the land would be bounded, aside from the river line, by the courses and distances of the conveyances according to the magnetic meridian. See *McIver's Lessee* v. *Walker,* 4 Wheat. 444, 4 L. Ed. 611; *Riley* v. *Griffin,* 16 Ga. 141, 60 Am. Dec. 726.

When all the evidence introduced, including the plats, is considered it must be concluded that the highway indicated on the plat of 1857 as running north and south between lots one and two was located on lot one, and that the east line of lot one and the west line of lot two are and were identical. The evidence shows that this road was west of the west line of lot two; that it was abandoned about 1860, and not used as a road afterwards, and the ground where the road was located was taken in as a lot. And no road is indicated on the plat of 1877, but this plat makes the east line of lot one and the west line of lot two identical, and indicates lot one as containing seven acres. Moreover, after Gise became the owner of lot one he first conveyed to one McCann a tract 140 feet square in the southeast corner of the lot, describing the same by metes and bounds; and the beginning point for this description was the southwest corner of lot two. And the same corner was used as the beginning point in the description of the first tract out of lot one conveyed by Gise to Susan Chrismer. So that we think it must be concluded that the southeast corner of lot one and the southwest corner of lot two are identical.

There is evidence that for thirty or thirty-five years the west line of lot two had been marked by a stable standing

at the southwest corner of the lot, and by a fence leading north from the stable. See *White* v. *Williams,* 48 N. Y. 344; *Richardson* v. *Chickering,* 41 N. H. 380, 77 Am. Dec. 769. A surveyor testified that he made certain measurements for the purpose of ascertaining the west line of appellee Huddleston's land; that he took as his starting point the southwest corner of lot two, and also took into consideration a stone marked with a surveyor's mark in the west line of lot two, which was 140 feet north of the southwest corner of that lot,—this stone marked the northeast corner of the 140 feet square out of the southeast corner of lot one, conveyed by Gise to McCann,—that the southeast corner of lot one and the southwest corner of lot two are the same point. Another surveyor testified that the stone in the west line of lot two stood immediately against the west side of the fence which marked the west line of lot two. This stone in the west line of lot two was also a recognized monument in a survey made of appellee Huddleston's land by another surveyor who testified.

It can not be said there is no evidence establishing the west line and the southwest corner of lot two and the southeast corner of lot one, from which the measurements were made in the conveyance to appellee Huddleston. What are the boundaries of a particular tract of land is a matter of law, but where the boundaries of a tract are located is a matter of fact. It was for the jury to say from all the evidence where the boundaries in dispute are actually located. The execution and recording of the deed to appellee antedates the deeds by the same grantor to appellant about nine years, and the deed to appellant makes the west line of the Huddleston land the east line of the land conveyed to him. The initial point of description in the deed to appellee is the southeast corner of lot one. But appellant insists that this point could be correctly obtained only by measuring 620.4 feet east from the range line, and that by so measuring the true southeast corner of lot one is further east than

the corner as measured from in the conveyance to appellee. But this measurement must be east from the range line at its actual location.   This location may be determined to a certainty.   It can not be determined from the plat.   Until appellant has shown that the initial point in the description in the deed from Chrismer to appellee Huddleston is less than 620.4 feet east of the actual range line, as established by the government survey, he is not in a position to claim that he received a less quantity of land by the deed to him than he was entitled to.   But the evidence fails to locate the range line.

The question is not whether measurements were made from a certain line designated on a plat as the range line, but were they made from the range line in fact ?   It is not a question whether the plat is right.   The draft of certain lines in a plat and the description of them in a deed are only evidence of the actual survey.   The lines marked on the ground constitute the actual survey, and where those lines are located is a matter of fact to be determined by the jury from all the evidence.   *Comegys* v. *Carley,* 3 Watts 280, 27 Am. Dec. 356; *Heaton* v. *Hodges,* 14 Me. 66, 30 Am. Dec. 731 and note on 735; *Scott* v. *Yard,* 46 N. J. Eq. 79, 18 Atl. 359; *Menasha Wooden Ware Co.* v. *Lawson,* 70 Wis. 600, 36 N. W. 412; *Cross* v. *Tyrone, etc., Co.,* 121 Pa. St. 387, 15 Atl. 643; *Johnson* v. *Archibald,* 78 Tex. 96, 14 S. W. 266, 22 Am. St. 27; *LeCompte* v. *Lueders,* 90 Mich. 495, 51 N. W. 542, 30 Am. St. 450.   It is not necessary that we decide, and we do not decide, the relative value of evidence establishing the east boundary line of lot one, determined by measurements made from the range line as actually located, and of the evidence introduced by appellees showing the location of such east line.

An objection was sustained to a question asked appellant on his examination as a witness,—whether he had said anything to appellees about having a legal survey made.   Thereupon he offered to prove "that prior to the commencement

of this action he requested and demanded of each and both of the defendants hereto that a proper and legal survey be made to establish the line between the plaintiff and said defendants now in controversy." Even if it should be held, a point we do not decide, that a refusal upon the part of appellees to join with appellant in a survey of the disputed line would place them in the wrong, yet the offer to prove does not show that appellees refused to join in such survey, or that they had any opportunity to comply with the demand before suit was brought. But provision is made for a statutory survey by any landowner who desires to establish, relocate, or perpetuate any corner, whether the owners of adjoining lands desire the survey or not. This survey is made *prima facie* evidence in favor of the corners so established and the lines so run, and, under certain conditions, it becomes conclusive evidence of the same. §8024 *et seq.* Burns 1901; *Wood* v. *Kuper,* 150 Ind. 622; *Sinn* v. *King,* 131 Ind. 183. We do not think the offer to prove is broad enough to bring it within the statement made in *Morgan* v. *Lake Shore, etc., R. Co.,* 130 Ind. 101.

Judgment affirmed.