## GARY LAND COMPANY *v.* GRIESEL.

[No. 21,788. Filed January 31, 1913.]

1. PUBLIC LANDS.—*State Lands.—Patents.—Construction.*—Where a section of government land was almost entirely bounded on the north by a river, which formed an irregular boundary, so that in making a survey it was necessary to divide the north half of the north half into lots by lines extending north and south, a patent from the State to one of such lots, described as containing 44.50 acres, more or less, carried with it the title to about 4.30 acres of marsh land lying north of such river and within the extended lines of the lot, although it was at the time of such survey covered with water and was not included in the 44.50 acres mentioned in the patent. pp. 206, 211.

2. PUBLIC LANDS.—*Swamp Lands.—Meandering Lines.*—Meander lines, run by the United States surveyor in the survey of swamp lands, were for the purpose of ascertaining the quantity of land to be sold, and are not boundary lines. p. 209.

3. PUBLIC LANDS.—*Patents.—Grant in Accordance to Official Plat. —Effect.*—When lands are granted according to an official plat of their survey, the plat with its notes becomes as much a part of the grant or deed by which they are conveyed, and, as far as limits are concerned, controls as much as if such descriptive features were written out on the face of the deed or grant. p. 209.

4. PUBLIC LANDS.—*Survey.*—*Variance Between Plat and Field Notes.*—In case of a variance between a plat of lands and the field notes made in taking the survey, the former must control. p. 209.

5. PUBLIC LANDS.— *Swamp Lands.*— *Survey.*— *Variance Between Plat and Field Notes.*—There is no variance between an official plat of lands showing an acreage which includes a small tract separated from the balance by a river, and field notes describing the small tract as "shaky marsh and under water one to three feet." p. 210.

6. BOUNDARIES.—*Determination of Boundaries.*—*Elements.*—*Quantity of Land.*—While the quantity of land contained in a tract is the least important element in determining the boundary, it may be looked to in the absence of any other sufficient description. p. 210.

7. DEEDS.—*Quantity of Land Conveyed.*—*"More or Less."*—A deed to a specific lot, described as containing a certain number of acres more or less, carries with it all the lands within the boundary lines of the lot. (*Tolleston Club* v. *Lindgren* [1907], 39 Ind. App. 448, 77 N. E. 818, distinguished.) p. 210.

8. JUDGMENT.—*Conformity to Issues.*—*Action to Quiet Title.*—In an action to quiet title to land, the judgment should be limited to the amount described in the pleadings. p. 211.

From Lake Circuit Court; *W. C. McMahan,* Judge.

Action by the Gary Land Company against Wilhelmina Griesel. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Knapp & Campbell* and *John H. Gillett,* for appellant.

*Herbert S. Barr, Harold H. Wheeler* and *Johannes Kopelke,* for appellee.

MYERS, C. J.—Appellant brought this action to quiet its title to certain land. The land in controversy is all that part of the northeast quarter of the northeast quarter of section 6, township 36 north, range 8 west, situated in Lake County, Indiana, lying north of the Grand Calumet River. The complaint was in four paragraphs, alleging ownership of the real estate in appellant, that appellee was claiming and asserting some right, title, interest or claim in and to said real estate adverse to appellant's ownership, which claims it is alleged are without right and cast a cloud upon appellant's

title.  Appellee answered by a general denial to each para-
graph.

Appellant claims title through a patent issued by the
State of Indiana, as grantee of the United States under the
"Swamp Lands Act" of 1850, to George W. Clarke for "Lot
one (1) of the northeast quarter of section number six in
township number thirty-six north, of range number 8 west
containing forty-four and 50/100 acres, be the same more or
less, situate in Lake County."  Appellee bases her claim
upon a patent from the State to John W. Griesel for the
"Frac. N. Cal. River, northeast quarter of section number
six (6) in township number thirty-six north, of range num-
ber eight (8) west, containing four and 30/100 acres, be the
same more or less, situate in Lake County."  Each party in-
troduced evidence tracing title from said patents, after
which the following stipulation was entered into:  "It was
admitted by the plaintiff that the defendant, at the com-
mencement of this action, had, and now has, the title that
came to John Griesel by the patent to him from the State,
which is hereinbefore shown as admitted in evidence, if said
Griesel received any title thereby to the tract here in con-
troversy, and it was admitted by defendant that the plaintiff
at the commencement of this action had, and now has, the
title that came to George W. Clarke by the patents to him
from the State, which are hereinbefore shown as admitted in
evidence, if said Clarke received any title thereby to the
tract here in controversy.  These admissions are expressly
made for the present trial only, and limited thereto, and are
not to bind the parties upon any subsequent trial of this
cause, if any such should thereafter take place."

The patent to Clarke was issued prior to the patent to
Griesel.  This case therefore resolves itself into the question
whether the 4.30 acres granted to Griesel was included
1.  in the grant to Clarke.  If so the grant to Griesel was
void, if not it was valid and the judgment of the lower
court must be affirmed.  The plat of the government survey

shows that the Grand Calumet (Calumic on the plat) River forms almost the entire northern boundary of said section 6. The river forming an irregular boundary, it was impossible to divide the section according to the regular system, by running lines and fixing corners in the river, and the north half of the north half of the section was divided into lots. Just north of lot 1 the Grand Calumet River flows entirely within section 6, and there is a fraction of the section on the opposite side of the river opposite lot 1 which is the northeast lot of the section. Appellant contends that this fraction is included within lot 1, and passed to George W. Clarke with his patent to the lot. Appellee contends that this fractional section is not a portion of lot 1, and that the subsequent patent to John W. Griesel was valid.

The patent for lot 1, issued to George W. Clarke, calls for 44.50 acres, more or less, and that is the amount of land that Clarke paid for at the statutory price of $1.25 per acre. No attention seems to have been given by the Auditor of State to the 4.30 acres north of the river. It is contended however by appellant that the 4.30 acres north of the river was marshy, wet land, and under water, which passed as a part of lot 1, for which no charge was made by the State owing to its character. The field notes of the government survey and the plat bear out this contention.

Sections 31 and 32 on the north, and in the adjoining north congressional township were surveyed before the survey of sections 6 and 5 respectively south of them. In surveying sections 5 and 6, the field notes recite that the line was run north between 5 and 6 to a point on the south bank of the "Calumic", now Calumet, where a post was set and witnesses fixed, then "64 over river on shaky marsh and under water from 1 to 3 ft., 70.73 set post on left bank of Calumic marsh, cor. to Sects. 5 and 6," and give witnesses. They then recite that this post (cor. sections 5 and 6) is "437 l'ks W of Old Cor. on Town. line. Land South of river poor, broken sandy soil, dwarf ash timber and narrow marshes

intervening from E to W. River sluggish and deep. North of river all shaky marsh and from 1 to 3 ft water.'' Accompanying the field notes was a plat showing the subdivisions

of the north half of section 6, with the lines and figures as they appear. The plat, it will be seen, shows the 4.30 acres on the north side of the river as land, not numbered as a lot, but it also appears that the line dividing sections 5 and 6 in township 36 north, did not coincide with the line dividing sections 31 and 32 immediately north, the line north being 437 links east of the line south, the later line run, and enough of the east line of section 32 is given on the plat to show that it is 383 links east of the east line of section 5. In addition, it appears from a plat in evidence, obtained from the office of the Auditor of State, and probably used by him in making sale of land, that he had shaded in green what was regarded as dry land, or at least the amount of land in each subdivision for which he should receive pay, in which he shaded that part of lot 1 lying south of the river, and indicated the north line as in the river, that is as if there was no land in lot 1 north of the river, but enclosed the whole within rectangular lines and designated it as having 44.50 acres, that is, gave no attention in selling the land to the portion north of the river, whatever its condition may have been. That plat also shows the alignment between sections 31 and 32, and 5 and 6, to be identical, and was mani-

festly not intended as a correct plat of the territory. It also appears that meander lines were originally run by the United States surveyor in fixing the quantity north of the river by courses and distances. Such lines are not boundary lines, but were run originally for the purpose of ascertaining the quantity of land for sale. *Tolleston Club* v. *State* (1895), 141 Ind. 197, 38 N. E. 214, 40 N. E. 690, and cases cited; *Kean* v. *Roby* (1896), 145 Ind. 221, 42 N. E. 1011; *Sizor* v. *City of Logansport* (1898), 151 Ind. 626, 50 N. E. 377, 44 L. R. A. 814; *Brophy* v. *Richeson* (1894), 137 Ind. 114, 36 N. E. 424; *Stoner* v. *Rice* (1889), 121 Ind. 51, 22 N. E. 968, 6 L. R. A. 387; *Kean* v. *Calumet Canal, etc., Co.* (1902), 190 U. S. 452, 23 Sup. Ct. 651, 47 L. Ed. 1134; *St. Paul, etc., Co.* v. *Schurmier* (1868), 7 Wall. 272, 19 L. Ed. 74.

The plat gives the total acreage of land in section 6 as 531.97. The 4.30 acres on the north side of the river are necessary to make up the 531.97 acres, which is marked on the plat as the total number of acres of land in the section. When lands are granted according to an official plat of their survey, the plat with its notes becomes as such a part of the grant or deed by which they are conveyed, and as far as limits are concerned, controls as much as if such descriptive features were written out on the face of the deed or grant. *Cragin* v. *Powell* (1888), 128 U. S. 691, 9 Sup. Ct. 203, 32 L. Ed. 566; *Brown* v. *Williams* (1899), 119 Mich. 606, 78 N. W. 785.

It has been held in this State, that in case of a variance between the plat and the field notes, the former must control. *Beaty* v. *Robertson* (1892), 130 Ind. 589, 30 N. E. 706; *Doe* v. *Hildreth* (1850), 2 Ind. *274. See, also, *Wilson* v. *Chicago Lumber, etc., Co.* (1906), 143 Fed. 705, 74 C. C. A. 529; *Haley* v. *Martin* (1904), 85 Miss. 698, 38 South. 99. It is said in *Doe* v. *Hildreth, supra,* at page *280, in regard to field notes: "But admit that they were

admissible in this case as evidence, still as the plat made from them by the surveyor-general was also admissible, and was in evidence, if there was any variance between the plat and field-books, the former must have controlled, for it repre-· sented the lines and corners as fixed by the surveyor-general and by which the land was sold.'' There is no con-

5.   flict between the plat and the field notes. The statement in the field notes, that the land over the river was ''shaky marsh and under water one to three feet'' accounts for the small area north of the river, not as dry land, because it is expressly described as shaky marsh and under water, but as land outside the river proper which elsewhere forms a boundary.

It is true that the quantity of land contained in a tract is the least important element in determining the boundary, but in the absence of any other sufficient description

6.   the quantity may be looked to, and it is here given as so many acres, and the land south as partly marsh, thus indicating that the land on the south, outside the river proper, while partly marshy, was included. The description of the land north of the river, as being ''shaky marsh, and from one to three feet under water'' doubtless accounts for the Auditor of State not computing it as dry land, for it is clear that it was not. *Illyes* v. *White River Light, etc., Co.* (1911), 175 Ind. 118, 93 N. E. 670; *Silver Creek Cement Corp.* v. *Union Lime, etc., Co.* (1894), 138 Ind. 297, 35 N. E. 125, 37 N. E. 721; *Allen* v. *Kersey* (1885), 104 Ind. 1, 3 N. E. 557; *Pierce* v. *Vansell* (1905), 35 Ind. App. 525, 74 N. E. 554; *Ayers* v. *Huddlestone* (1903), 30 Ind. App. 242, 248, 66 N. E. 60; *Goodbub* v. *Scheller* (1892), 3 Ind. App. 318, 29 N. E. 610.

The grant was made to George W. Clarke as lot 1 in section 6 for 44.50 acres be the same more or less, and that grant carried all the land within the boundary lines

7.   of lot 1. *Stoner* v. *Rice, supra; Brophy* v. *Richeson, supra; Kean* v. *Roby, supra; Kean* v. *Calumet Canal,*

*etc., Co., supra; Tolleston Club* v. *State, supra; Mason* v. *Calumet Canal, etc., Co.* (1898), 150 Ind. 699; *John Hilt Lake Ice Co.* v. *Zahrt* (1902), 29 Ind. App. 476, 62 N. E. 509. Our attention is called to the case of *Tolleston Club* v. *Lindgren* (1907), 39 Ind. App. 448, 77 N. E. 818. In that case the petition to transfer the cause to this court was filed too late to confer jurisdiction upon this court to consider the petition, and hence it was not considered. There are doubtless distinctions in the facts between that case and this, but if it can be said to be in conflict with the rule herein declared, it is expressly overruled.

The only other question presented by this appeal is as to the action of the court in overruling appellant's motion to modify the judgment. That motion was based upon the theory, that as to any land outside the northeast quarter of the northeast quarter of section 6, or lot 1 on the survey and plat of section 6, the judgment was outside the issues, because appellant in this cause did not claim beyond those lines, and that if there was land north of the river and east of the east line of section 6, the title to such land was not in issue in this case. The motion should have been sustained, as the judgment in this case should be limited in any event to lands within the lines of lot 1 of section 6, but as we hold that lot 1 embraced all the land and land under water in, or on both sides of the river within the lines as platted and run, the judgment must be reversed for that reason, and the question of the form of the judgment could only be material on another trial, as requiring it to be limited to land in section 6.

The judgment is reversed, with instructions to the court below to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion

Cox, J., dissents.

NOTE.—Reported in 100 N. E. 673. See, also, under (3) 5 Cyc. 891; (4) 5 Cyc. 923; (7) 13 Cyc. 639; (8) 23 Cyc. 816. As to the effect of a patent of public lands, and how the patent is to be attacked, see 2 Am. Dec. 568; 12 Am. Dec. 564.